[No. 11827.   Department One.   September 12, 1914.]

ANNA MICKELSON, *Respondent*, v. GEORGE W. FISCHER *et al.*, *Appellants.*[1]

MUNICIPAL CORPORATIONS—USE OF STREETS—COLLISION WITH AUTO- MOBILE—DUTY TO STOP, LOOK AND LISTEN—INSTRUCTIONS. It is not error for the court to instruct the jury that a pedestrian is not re- quired to stop, look, and listen when about to cross or when crossing a city street, and that failure to do so does not constitute negligence, but that the pedestrian is bound to use care for his safety com- mensurate with the attendant circumstances.

SAME—COLLISION WITH AUTOMOBILE—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY. Whether plaintiff, run down by an automobile, was in the exercise of due care in attempting to cross to the opposite side of the street on alighting from a street car, after looking and seeing no vehicles, and whether defendant was negligent in passing around the rear end of the street car to pass it on the wrong side of the street, are questions for the jury, since plaintiff was not bound to anticipate the approach of vehicles on the wrong side of the street, but had a right to rely on an observance of the law of the road requiring vehicles to travel on the right-hand side of the street, the defendant, however, having a lawful right to the use of the left-hand side of the road if the travel thereon is not such as to make his conduct a source of danger.

SAME—LAW OF ROAD—INSTRUCTIONS—APPEAL—HARMLESS ERROR. An instruction, in an action for injuries to a pedestrian struck by an automobile, that "if the defendant, at the time of the injury, was violating an ordinance of the city by being upon the left-hand side of the street and was guilty of negligence, yet if the plaintiff, at the time of the injury was also violating an ordinance of the city by being unlawfully upon the part of the street where the automobile had the prior right, and was guilty of negligence, and the negligence of both plaintiff and defendant was a proximate cause of the injury to plaintiff, then plaintiff cannot recover," is not prejudicially erroneous as charging negligence *per se*, when considered as a whole, the court evidently intending to follow the thought, theretofore expressed, that the defendant might, under proper circumstances, drive on the left- hand side of the street, but that he might be guilty of negligence in so doing.

TRIAL—INSTRUCTIONS—REQUESTS. It is not error to refuse re- quested instructions sufficiently covered by the instructions given.

[1]Reported in 142 Pac. 1160.

MUNICIPAL CORPORATIONS—STREETS—USE OF AUTOMOBILES—VIOLATION OF ORDINANCE—NEGLIGENCE. It is negligence *per se* to drive an automobile on a city street at an excessive rate of speed and in violation of an ordinance defining the law of the road as applied to city streets.

DAMAGES—PERSONAL INJURIES—EXCESSIVE VERDICT. A verdict for $8,500, for injuries sustained through being struck by an automobile, is excessive and will be reduced to $5,000, where it appears that plaintiff, thirty years of age, suffered slight physical injuries about the back and limbs, possibly causing a retroversion of the womb, was confined to her room about six weeks and suffered a severe nervous shock which has persisted, that she suffers·pain along her spine and a tenderness in the abdomen and in the lumbar region of the back, and is aenemic and suffers insomnia, but has no organic trouble, that, at the time of the injury she earned $15 a week as a tailor's finisher, but at the time of the trial had been out of work for seven months and had spent $50 for medicine, and that she refused hospital treatment, which would probably have been beneficial.

TRIAL—EXCESSIVE VERDICT—DUTY OF JUDGE. It is the duty of the trial judge to pass upon the amount of the verdict, on motion to reduce the same on the ground of excessiveness, instead of leaving the question to be decided by the supreme court.

Appeal from a judgment of the superior court for King county, Humphries, J., entered September 22, 1913, upon the verdict of a jury rendered in favor of the plaintiff for $8,500, for personal injuries sustained by a pedestrian struck by an automobile. Reversed, unless $3,500 is remitted.

*Alexander Dickinson* and *Peters & Powell,* for appellants.
*Brightman, Halverstadt & Tennant,* for respondent.

CHADWICK, J.—On the 15th day of December, 1912, at about five o'clock in the evening, plaintiff got off a southbound street car at the intersection of Westlake avenue and Denny Way, in the city of Seattle. The car was of a type known as a "single ender," that is, the exits, front and rear, faced the right curb so that it was impossible for a passenger to alight on the side next to the parallel street car track. Plaintiff stepped off the front end of the car, looked back toward the rear end where passengers were alighting

from and entering the car, and seeing no vehicles, passed rapidly from the front end of the car toward the opposite side of the street. She had gone but a short distance when she was struck by the rear fender of defendants' machine and thrown to the pavement. She was pushed a few feet by the rear wheel of the machine, which had caught her dress, holding her helpless to protect herself.

Defendant's version of the accident is that he was coming south on the right-hand side of Westlake avenue; that when his machine came up to the street car, which had stopped and was discharging and taking on passengers, his chauffeur cut around the rear end of the street car to the left, intending to pass it on the off side. Just as the machine passed the rear end of the street car, plaintiff came rapidly, and without attention to her own safety, within the range of the lights on his machine; that both brakes were put on and the machine was steered further to the left; that the setting of the brakes and the turn of the machine to the left caused it to skid; that it turned nearly around, and in so doing plaintiff was struck down, caught by her clothing and pushed along, whether a greater or lesser distance, in substantially the same manner as is testified to by plaintiff and her witnesses. That the automobile was exceeding the speed limit as prescribed by ordinance seems to be admitted, but whether it was otherwise going so fast that it could not be readily controlled, and whether a horn was sounded and the lamps were lit and in order, are disputed facts. The case went to trial upon general denials and a charge of contributory negligence. From a verdict in the sum of $8,500, defendants have appealed.

The first assignment of error is that the court instructed the jury that the law does not require a pedestrian to stop, look and listen when about to cross or while crossing a city street, but that plaintiff was bound to use ordinary care, and although the jury found that she did not stop, look or listen,

that that fact would not necessarily constitute negligence on her part.

We have frequently said, and it is what every one knows, that cases of this kind speak their own law. There is no positive duty to stop, look and listen when about to cross a city street, although the circumstances attending may be such as to charge a pedestrian with contributory negligence if he does not. Or, to state it in another way, the pedestrian is bound to use due care for his own safety, the measure of that care being dependent upon the attendant circumstances. The last expression of the court upon this phase of the case is to be found in *Beeman v. Puget Sound Traction, L. & P. Co.*, 79 Wash. 137, 139 Pac. 1087. When applied to the facts, we find no error in the court's instructions.

Plaintiff was not bound to anticipate a car or other vehicle coming south on the left-hand side of the street. There are certain rules or laws of the road the observance of which, or reliance upon, become instinctive. The care of a pedestrian situate as plaintiff was would be to look to her right for cars or vehicles, relying upon the fact that traffic upon that side of the street would be from that direction. Defendant undertakes to distinguish the case of *Lewis v. Seattle Taxicab Co.*, 72 Wash. 320, 130 Pac. 341, and *Hillebrant v. Manz*, 71 Wash. 250, 128 Pac. 892. In the one case, it is said the pedestrian looked up and down the street. In the *Lewis* case, counsel say that the pedestrian was in full view of the driver of the automobile, that the driver could watch his movements and direct his machine accordingly; whereas, in the case at bar, it was dark, the driver could not see the course taken by the pedestrian, and as soon as he did see her, he applied the brake. The fallacy of this argument lies in this: that the reason defendant did not see plaintiff is that the street car intervened and a thing happened which in law he was bound to anticipate, that is, that the street crossings would be used by pedestrians when cars are not passing or are stopped to discharge passengers; and, by the same rea-

soning, the thing happened which plaintiff was not bound to anticipate, that is, a vehicle coming at from ten to twelve miles an hour on the wrong side of the street. Defendant was in the wrong place; he was not obeying the law of the road as it applies to crossings in city streets. In *Segerstrom v. Lawrence*, 64 Wash. 245, 116 Pac. 876, we held that a person may lawfully use what is to him the left side of the road, with the qualification—and defendant's case falls squarely within it—"if there is no travel at that time upon that part of the way, or if the travel is not so heavy as to make his conduct a source of danger." Under the circumstances, it was clearly for the jury to say whether defendant was negligent and whether plaintiff was exercising due care for her own safety.

Although the jury were instructed that defendant might be on the left-hand side of the road under such conditions as are enumerated in the *Segerstrom* case, it is earnestly contended that defendant has been prejudiced by the addition of the following:

*"But if the defendant at the time of the injury was violating an ordinance of the city by being upon the left-hand side of the street and was guilty of negligence,* yet if the plaintiff at the time of the injury was also violating an ordinance of the city of Seattle by being unlawfully upon the part of the street where the automobile had the prior right, and was guilty of negligence, and the negligence of both plaintiff and defendant was a proximate cause of the injury to plaintiff, then the plaintiff cannot recover."

Defendant finds in the italicized words a charge of negligence *per se*. We do not so read the instruction, which must be considered as a whole. The trial judge evidently intended to follow the thought he had just theretofore expressed, that is, that defendant might, under proper circumstances, drive on the left-hand side of the street, but might in so doing be guilty of negligence. We understand the instruction in that way, and will presume that the jury understood in the same way.

Counsel for defendant requested instructions covering the doctrine of reciprocal rights, which were refused by the court. The instructions given by the court sufficiently cover this phase of the case, and there was no error in refusing to instruct in the form and manner requested by counsel.

There was ample evidence to sustain a finding that defendant was violating the ordinances of the city defining the duties of drivers of automobiles. This has been held to be negligence *per se*. *Anderson v. Kinnear*, 80 Wash. 638, 141 Pac. 1151; *Hillebrant v. Manz, supra; Ludwigs v. Dumas*, 72 Wash. 68, 129 Pac. 903. We will not further discuss that phase of the case.

Finally, it is contended that the verdict, $8,500, is so excessive as to indicate passion and prejudice on the part of the jury. Plaintiff was thirty years old; her physical injuries were slight; no more than some bruises about the back and limbs. Her menstrual period, two weeks past, recurred within the next day or two. It is possible that a retroversion of the womb can be attributed to the accident. She was confined to her room about six weeks, and has since been up and about the house. She suffered a severe nervous shock which has persisted. She suffers pain along her spine, and a tenderness in the abdomen and in the lumbar region of the back. She is anemic and suffers from insomnia. There is no organic trouble. Her heart, kidneys and liver and lungs are sound. Her condition is described as traumatic neurasthenia. It is said that it is not a disease but a condition erratic in its workings, but, nevertheless, fixed in the mind of the patient. At the time of the injury, she was earning $15 a week as a tailor's finisher, and at the time of the trial had been out of work for about seven months and had spent about $50 for medicine. Plaintiff refused hospital treatment, where, under proper nursing and more hopeful influences, she might have been benefited. She has done nothing to remedy her physical ailment, the prolapsus of the uterus. That infirmity might be treated either by the use of tampons or presseries,

or by a simple surgical operation, the cost of which would be about $250, and from which 65 per cent to 75 per cent of all cases completely recover. That such treatment would in all probability benefit plaintiff seems to be agreed upon by the medical men.

There is a duty resting upon every one who seeks to recover damages to minimize the amount to be measured in dollars and cents. An allowance of damages in cases of traumatic neurasthenia touches the border of speculation at best, and it is manifestly unfair for one who seeks a recovery to put a defendant to the hazard of a further speculation by refusing the aids which science affords and which are available, or by postponing the time of treatment until after a trial and a verdict.

The trial judge must have had no doubt that the verdict was too large. Otherwise he would have denied the motion to reduce it without comment or with a finding that he thought it to be just. We had the same situation in the case of *Magnuson v. MacAdam*, 77 Wash. 289, 137 Pac. 485, where we said:

"At the time of passing upon appellants' motions for a new trial and for judgment *non obstante*, the trial judge was informed by appellants that they would appeal this case in any event, if their motions were denied. Thereupon, the trial judge in substance stated that he would not pass upon the amount of the verdict to determine whether it was excessive, but would permit that question to come before this court in connection with other questions that might be raised on an appeal. It was the duty of the trial judge to pass upon appellants' contention that the verdict was excessive. His position indicates an impression or belief on his part that the verdict was excessive. We are convinced that it was, and conclude that the respondent must either consent to a reduction, or submit to a new trial."

In this case, "the court said (this part of the record is in the third person) that he would rule against defendants on both motions (motion for judgment *non obstante* and a mo-

tion for a new trial). As to the excessiveness of the verdict, however, he declined to express an opinion, stating that he would allow that question to be passed upon by the supreme court."

Now it is plain that it is the imperative duty of a trial judge to pass upon a motion to reduce a verdict. The power of an appellate court to give an option to take a reduced amount or submit to a new trial is now well established. It is made to rest upon the principle that it is within the power of the court to do justice when it appears that the damages allowed are so disproportionate to the injuries sustained as to indicate that the jury acted through passion or prejudice. Appellate courts have been criticized for exercising this power, and it has been said by some that it is an usurpation of the functions of the jury. The trial judge must have been so impressed with the belief that it was the unquestioned privilege of this court to reduce the verdict or order a new trial that he has evidently overlooked the duty imposed upon him by statute when he passed the amount of the verdict up to this court.

If, within thirty days after the remittitur goes down, plaintiff will file a remission of all above $5,000, the judgment will be allowed to stand. If she does not, the case will be reversed and a new trial had. Defendants will recover costs in this court.

CROW, C. J., MAIN, ELLIS, and GOSE, JJ., concur.