The plaintiff obtained verdict and judgment against the defendant for $2,910.95. Writ of error followed.
The suit is predicated on a total disability and waiver of premium clause of a life insurance policy. The amount of the verdict and judgment represents the full claim of plaintiff for the sum of $250.00 per month (being 1% monthly of the amount of the policy, $25,000) and premiums paid by plaintiff on his policy, both with interest, during the eight month's period of May, 1930, to January 10, 1931.
An assignment of error goes to the action of the trial court permitting two physicians who had examined and treated the plaintiff to express their opinion, in response to questions propounded by counsel for plaintiff, that during the period aforesaid plaintiff was unable to perform in customary manner the duties necessary to the prosecution of any occupation or employment for wage or profit. It is urged that this expression of opinion by the physicians was an invasion of the province of the jury. We cannot share that view. The plaintiff was suffering from toxemia. Obviously, that is not *Page 520 
a matter about which laymen are advised. It was therefore proper not only for the physicians to testify as to the nature of the disease but as to its effect on the patient during their period of observation. In dealing with such matters it would be extremely difficult, if not impossible, for physicians to make clear to the jury just the characteristics of the disease and its effects. If the patient had been suffering from a broken leg the situation would be different; the nature of the injury and the resultant incapacity of the patient to perform gainful duties would have been obvious.
Another point of error pertains to the testimony of William Miller who was chauffeur for the plaintiff part of the time during which he claims he was suffering from total disability. Certain conduct of the plaintiff within that period was sought to be shown. This related to his rather frequent trips to other cities with a female companion; that they would stay at hotels several days at a time; that on such occasions the plaintiff did not use a cane or limp as he did at home. This testimony was proper and in our opinion the trial court erred in indicating to the defendant that the testimony with reference to plaintiff's conduct with the female companion would not be admitted. But, it appears from the record, that following a statement by counsel out of the presence of the jury as to what he expected to prove in the respect mentioned, the court stated to counsel for defendant: "You can go ahead and ask the questions and I will rule on them when they come." If a sufficiently full development of the facts was not thereafter brought out by counsel in interrogating the witness we cannot say that the responsibility therefor rested upon the trial court, for, seemingly, counsel was then permitted to propound to the witness such questions as he desired.
A third point of error presents the soundness of plain. tiff's instruction No. 1 given to the jury over the objection of the defendant. This instruction sets forth at some length provisions of the insurance policy with reference to the monthly sum to be paid the plaintiff in the event of total disability, and waiver of premium during such period. The instruction proceeded: "And you are further instructed in this connection *Page 521 
that the total disability contemplated by this policy does not mean a state of absolute helplessness, but means the inability to do substantially all of the material acts necessary to the prosecution of any occupation or employment for wage or profit in substantially the customary and usual manner in which such occupation or employment for wage or profit is prosecuted." This explanation of what is meant in insurance policies by the expression "total disability" seems sound and reasonable. "Total disability" is of course a relative expression. It does not mean absolute incapacity, mental or physical. The phrase must be construed rationally and practically. This, the instruction did. 14 Ruling Case Law, page 1316; 5th Supplement (idem), page 3810.
The most serious question presented on the record is this: Is the plaintiff estopped from recovery because of his delay in taking proper treatment for his ailments after having been advised by competent physicians as to what he should do? The facts in detail are these: On April 17, 1930, he first consulted his physician, who, after a thorough physical examination, informed plaintiff that he was suffering from a toxic condition of the blood and advised him to consult a dentist regarding a diseased condition of his gums and infected teeth and a specialist concerning the removal of diseased tonsils. The physician then prescribed treatment and placed him on restricted diet. This same physician, after another examination about May 1, 1930, again advised him that he would have to have "something done with his teeth and tonsils, that they were probably responsible for his feelings." July 19th, plaintiff first visited a dentist who, after an X-ray examination, informed him that a lower molar was badly abscessed and should be removed. Plaintiff's gums were treated for the first time January 22, 1931. His tonsils were removed in the same month, and one of them was found to be badly infected. He did not have his tooth extracted until February 16, 1931. Plaintiff's physician, and another who examined him subsequent to the removal of his tooth and tonsils, stated that his condition had improved.
Was it plaintiff's duty in the premises to have the infected tooth extracted, the diseased gums treated and the *Page 522 
diseased tonsils removed promptly or could he postpone acting on the advice of his physician and claim disability benefits under the policy for an indefinite period? No cases directely in point are cited, and we find none. Decisions in tort actions and workmen's compensation cases are closely analogous to the case at bar. It is the general rule in both of those classes of cases that the claimant must act reasonably to minimize the disability.
In actions of trespass for personal injuries, the courts hold that a plaintiff should submit to a simple operation, which prudent men ordinarily would undergo under such circumstances, by way of reducing damages. In the case of McCaffrey v.Schwartz, 285 Pa. 561, 132 A. 810, the court held that the evidence warranted an instruction that as plaintiff's injured shoulder had developed adhesions which restricted the use of his hand, he should submit to an operation, under an anaesthetic, and permit the adhesions to be forcibly broken, to reduce damages. The case of Leitzell v. Del., L. W. Ry. Co.,232 Pa. 475, 81A. 543 48 L.R.A. (N.S.) 114, holds similarly as to probable permanent knee injury. In Cero v.Oynesando, (R.I.) 138 A. 45, it was held that plaintiff must submit to an operation for removal of a traumatic cataract in reduction of damages for personal injuries; in White v. Chicago N.W. Ry. Co., 145 Iowa 408, 124 N.W. 309, evidence as to the propriety of an operation upon a hand, under anaesthetic, for the further surgical repair of ends of remaining portions of fingers which had been partly cut off in an accident was held to have been properly admitted as bearing upon the question of damages; in Mickelson v. Fischer, 81 Wn. 423, 142 P. 1160, it was held that the trial court should have sustained a motion to reduce the amount of the verdict because of plaintiff's refusal to submit to a simple surgical operation to correct a prolapsus of the uterus; Donovan v. New Orleans Ry. Light Co.,132 La. 239, 61 So. 216, 48 L.R.A. (N.S.) 109, is a case in which the amount of damages recovered was reduced by the court because plaintiff refused to undergo a simple surgical operation for treatment of umbilical hernia. Thus the general rule as to injuries: It is the duty of a *Page 523 
person injured to procure medical and surgical attention if the nature of the injury reasonably requires it, and evidence of failure in this regard, whereby the injuries are aggravated, is admissible in mitigation of damages. 17 Corpus Juris, p. 779; Thompson on Negligence, Vol. VIII, sec. 7210; Sutherland on Damages (Berryman, 4th Ed.), Vol. 1, sec. 90; Sedgwick on Damages, (9th Ed.), Vol. 1, sec. 214a; 8 Ruling Case Law, p. 448. "If the injury is aggravated by the plaintiff's neglect to follow the directions of his physician he is to that extent debarred from recovering." 8 Ruling Case Law p. 448. In accord: Thompson on Negligence, p. 926 of volume cited.
In personal injury cases no damage will be allowed which might have been prevented by submitting to treatment to which a reasonably prudent man would have submitted to improve his condition. Texas P. R. Co. v. Behymer, 189 U.S. 468;Birmingham R., Light Power Co. v. Anderson, 163 Ala. 72,50 So. 1021; Santa Fe Ry. Co. v. McMannewitz, 70 Tex. 73, 8, S.W. 66.
Workmen's compensation cases: The supreme court of Michigan in O'Brien v. Albrecht Co., 206 Mich. 101, 172 N.W. 601, 6 A.L.R. 1257, denied a claim of compensation for diminished earning capacity to claimant who refused to submit to an operation for hernia. To same effect: Sun Coal Co. v. Wilson, (Tenn.) 245 S.W. 547; Strong v. Iron Metal Co., 109 Kan. 117,198 p. 182, 18 A.L.R. 415; and Schiller v. B. O.R. Co., (Md.) 112 A. 272. Compensation was denied claimant until he should submit to an operation for the removal of a cataract, in the case of Joliet Motor Co. v. Industrial Board,280 Ill. 148, 117 N.E. 423. Of like import: Operation to reduce fracture of the hand, American Smelting Refining Co. v.Industrial Com'n., (Utah) 290 P. 770; same holding as to like injury, Mt. Olive Coal Co. v. Industrial Com'n., 295 Ill. 429,129 N.E. 103; same effect as to operation for ulcer resulting from leg injury, Lesh v. Ill. Steel Co.,163 Wis. 124, 157 N.W. 539; also Kricinovich v. Car Foundry Co.,192 Mich. 687, 159 N.W. 362, holding similarly as to leg injury. Numerous cases are collected in L.R.A., 1916A, at p. 139. *Page 524 
The courts are in accord in the rule that in determining what constitutes reasonable or unreasonable refusal to submit to treatment, including minor surgical operations, to alleviate pain and suffering and improve one's condition, the facts of the particular case must govern. That some individuals are timid or oversensitive to pain has not precluded the courts from applying the rule in cases affecting their rights. The rule is not varied to meet individual idiosyncrasies.American Smelting Refining Co. v. Industrial Com'n., supra;O'Brien v. Albrecht Co., supra; Strong v. Iron Metal Co.,supra. The evidence discloses that the surgical treatment to which the plaintiff in this case should have submitted promptly is ordinarily unattended by great risk. Plaintiff's only excuse for refusing to submit to the operation advised by his physicians was that he thought he could improve his condition by other treatment.
Courts readily distinguish between a critical surgical operation necessarily attended by risk of failure or of death, and a simple surgical operation not so attended, and which the ordinarily prudent man would undergo. There is no such duty on the part of one seeking a recovery where the operation would be a critical one. 17 Corpus Juris, p. 780. For a period of months plaintiff not only refused or neglected to submit to a tonsillar operation, but he also refused to have an abscessed tooth extracted and diseased gums treated. His conduct was not in accord with the duty he owed the insurance company if he was expecting it to underwrite his disability.
Ordinarily, the question of duty of a plaintiff to submit to surgical treatment to minimize damages is for jury determination. But in such cases, as in the trial of actions generally, that which is ordinarily a question of fact for the jury may become one of law for the court if the facts are clear. Here, they are clear, namely: the information given to plaintiff by his physician as to the causes of his ailments; the advice of the physician to plaintiff that he should have an infected tooth extracted and tonsils removed; the delay by plaintiff of about six months before he followed the advice which had been given him; the early improvement of plaintiff subsequent to his belated compliance with the advice of *Page 525 
his physician. On these bases of fact it was for the court to say whether in the light thereof the plaintiff as a matter of law was entitled to recover of the defendant for the full period for which he claimed disability. The following cases recognize this proposition: Edward T. Snooks' case,264 Mass. 92, 161 N.E. 892; Jendrus v. Detroit Steel Products Co.,178 Mich. 265, 144 N.W. 563, and Mickelson v. Fischer, supra.
On principle, and under a parity of reasoning in analogous cases, such as above set forth, it must be held that the plaintiff's claim as to the full eight months' period cannot be sustained in law. While the defendant was not entitled to a directed verdict as requested (for this would have relieved it of all liability), it was nevertheless entitled to have its liability limited to such period wherein the plaintiff's disability, if it in fact existed, would not probably have been relieved even if plaintiff had acted promptly on his physician's advice, considering that subsequent to removal of diseased tonsils and an infected tooth certain time must necessarily elapse before an improved condition of the patient can result.
We reverse the judgment, set aside the verdict, and award a new trial.
Reversed and remanded.