[No. 28562. Department One. March 16, 1942.]

GEORGE COX, *Respondent*, v. JOHN C. KIRCH, *Appellant*.[1]

*The Attorney General* and *John E. Belcher, Assistant,* for appellant.

*O. G. Follevaag* and *Williams & Cooney,* for respondent.

[1] Reported in 123 P. (2d) 328.

DRIVER, J.—Plaintiff, a pedestrian, brought suit for damages for personal injuries which he sustained in a collision with an automobile driven by the defendant. The court heard the case without a jury and found:

"That the defendant was operating said automobile at a greater speed than what was reasonable and proper under the conditions existing at the point of operation, and commenced to pull his car to the left of the center line of the highway, about 150 to 175 feet before striking the plaintiff, and at the point of colliding with plaintiff, the defendant was four feet on the south [his left] side of the yellow center line of said highway."

The court further found that the defendant "skidded his car" thirty-five feet before and thirty feet after striking the plaintiff, which indicated excessive speed; that defendant failed to exercise due care when he observed plaintiff on the highway two hundred feet distant, and negligently and carelessly drove his car to the left of the center of the highway, striking and injuring the plaintiff. Judgment for plaintiff was entered, and defendant appealed.

Appellant does not challenge the trial court's findings as to his own negligence. As stated in his opening brief, his assignments of error raise only the question whether the record shows that respondent was guilty of contributory negligence.

There was no court reporter functioning at the trial, and the statement of facts consists of a narrative summary of the testimony of the witnesses. The facts which bear upon the one question under consideration are as follows: The highway on which the accident occurred extends easterly and westerly through the unincorporated town of Clayton. There was no direct testimony as to its width. A map admitted in evidence as an exhibit, which appears to be a blue-print copy of the plat of Clayton, depicts it as sixty feet wide,

but evidently that is the width of the entire right of way. From another exhibit, a picture of the scene of the collision, the roadway appears to consist of a central oil surfaced portion about twenty feet wide, flanked on either side by a graded shoulder.

At 4:30 in the afternoon of October 27, 1939, respondent left the brickyard on the north side of the highway, where he was employed, and started to walk across the road to the southerly side, following a pathway which the brickyard workers have used for sixteen years. At the same time, appellant was approaching along the highway from the east. As respondent stood on the north shoulder, facing south, the highway to his left (east) was straight for at least a thousand feet, while to his right (west), it turned southward in a pronounced curve. Respondent testified:

"When I reached the shoulder of the highway, I stopped and looked to my left and saw a car approaching. It was a little to the west of the McGorty Service Station, about one-eighth of a mile to my left. I also looked to my right, and there was a car coming about 20 feet from me, and I started across the highway, feeling certain that I could get across before the car from the east reached the point where I would be crossing. I had reached the yellow center line in the highway and a short distance south of the yellow line when I was struck by a car and knocked unconscious, . . ."

A Clayton storekeeper testified that he heard the crash of the collision and saw respondent "up in the air," with his arms stretched out, in front of appellant's car; that respondent "was on the south side of the yellow line when he was hit"; and that appellant's car came to rest at the curb on the south side of the highway, about thirty-five feet from the point of impact.

Another witness for respondent stated that he heard a loud crash and, upon running across the road, found respondent in the gutter on the south side. There had

been a slight mist, he said, and the pavement was wet and "I could plainly see the tracks of the automobile for more than 175 feet east of where Mr. Cox [respondent] was struck. I could plainly see where the left wheels crossed the yellow line of the pavement, and stayed on the south side of the yellow center line of the pavement from there on, angling slightly to the left up to the point where George Cox was hit."

The appellant's version of the accident was as follows:

"I reached Clayton about 4:40 p. m. and a car was ahead of me which turned into a side street next to Westby Brothers' Garage. I noticed a man coming on to the north side of the highway, crossing the street from the foot path that leads from the brickyard to the highway. I was about 150 to 200 feet from him when I first saw him. There was another car coming in the opposite direction which I passed about 20 or 25 feet before striking Mr. Cox. . . . The center of my radiator struck Mr. Cox, and he was exactly on the yellow line when I hit him. I thought I was going pretty slow when I hit him; just my personal opinion. The road was wet from a light mist. . . . After I hit him, the car skidded on the super of the road . . . and stopped clear to the south side of the road."

On cross-examination, appellant stated:

"I had been in Clayton a number of times and I knew the employees from the brick plant crossed the highway after work at the point where Mr. Cox crossed, and at about that time. . . . I sounded the horn and put on the brakes about the same time. I skidded for 35 feet before I struck Mr. Cox. After I struck him, I skidded for 30 feet."

An employee of the brickyard company, a witness for appellant, testified that he was crossing the road about three hundred feet east of the point where the collision occurred when he heard a crash and a horn "about the same time." On cross-examination, he

stated that he did not know how fast appellant's car was going, "but I would say about 25 or 30 miles an hour."

Another brickyard workman, also called as a witness for appellant, said that he had worked with respondent "practically all afternoon on the date of the accident"; that "The place is noisy and leaves one deaf for about two hours"; that he had crossed the highway from the brickyard somewhat ahead of respondent, and, when he reached the sidewalk on the south side and turned around "I saw George Cox about at the yellow center line of the highway. It seemed like Mr. Cox stopped for an instant about in the center of the road when he was struck." On cross-examination, he testified that he did not know why he had turned around, but he did not hear any horn; that he had seen appellant's car strike respondent, and that respondent was then *"about four feet south of the yellow line."*

Appellant calls attention to the fact that respondent, after looking to his left once before starting to walk across the road, did not look that way again. This, appellant urges, constituted contributory negligence, particularly in view of the following provision of Rem. Rev. Stat., Vol. 7A, § 6360-99 [P. C. § 2696-857]: "Pedestrians crossing a roadway other than at intersection crosswalks shall yield the right of way to all vehicles upon the roadway." As stated in *Martin v. Hadenfeldt,* 157 Wash. 563, 567, 289 Pac. 533, a rule of the road right of way is relative rather than absolute, and does not absolve one in the favored position from the duty to exercise due care to avoid an accident. The last sentence of the section of the statute above quoted expressly imposes a like limitation on the right of way which it gives to vehicles over pedestrians, as follows: "Notwithstanding the provisions of this

section, every operator of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway and shall give warning by sounding the horn when necessary. . . ."

Another rule of the road (Rem. Rev. Stat., Vol. 7A, § 6360-75 [P. C. § 2696-833]) provides:

"Whenever any person is operating any vehicle upon any public highway of this state he shall at all times drive the same to the right of the center of such highway except when in the exercise of care in the overtaking and passing of another vehicle traveling in the same direction, or where an obstruction exists it is necessary to drive to the left of the center of such highway, . . ."

The record amply supports the trial court's finding that, when respondent was struck, he was on the south (appellant's left) side of the center of the highway. Appellant was not passing or attempting to pass another vehicle traveling in the same direction, nor does he claim that there was any obstruction whatsoever on his own side of the road.

When respondent, before stepping onto the roadway, looked to his left and saw a vehicle approaching an eighth of a mile away, he had good reason to believe it would not reach him until he was well out of its proper lane of travel. If he had been struck *before* he passed the center line of the road, a very different situation would have been presented. But he had gone beyond the center line, and his primary concern then was to keep a lookout to his right for vehicles lawfully proceeding eastward on the south side of the highway, especially so in view of the fact that there was a curve to his right, around which a car might suddenly come in his range of vision. The appellant had all of the north half of the highway and the north shoulder on which to pass behind respondent and avoid hitting him.

Respondent had the right to assume that appellant would obey the rules of the road, and was justified in relying upon that assumption until he knew or, in the exercise of reasonable care, should have known the contrary. *Mickelson v. Fischer,* 81 Wash. 423, 142 Pac. 1160; *Wright v. Zido,* 151 Wash. 486, 276 Pac. 542; *Davis v. Riegel,* 182 Wash. 1, 44 P. (2d) 771; *Beck v. Dye,* 200 Wash. 1, 92 P. (2d) 1113, 127 A. L. R. 1022.

No decision of this court exactly in point has been called to our attention. Many cases have been cited in which there was a collision between a vehicle and a pedestrian while the latter was crossing a city street on an intersection crosswalk and had the statutory right of way over the vehicle. Such cases announce the firmly established rule that, where, in such a situation, the pedestrian looks for traffic before crossing the street but fails to look again after starting to cross, the question whether he is guilty of contributory negligence depends on many circumstances and conditions, such as the amount of traffic, the distances of approaching vehicles, the necessity of observation in other directions, the existence of statutes or ordinances giving pedestrians the right of way, and other elements. *Olsen v. Peerless Laundry,* 111 Wash. 660, 191 Pac. 756; *Davis v. Riegel, supra; Ahrens v. Anderson,* 186 Wash. 182, 57 P. (2d) 410.

In *Hooven v. Moen,* 150 Wash. 8, 272 Pac. 50, the general underlying principle of the foregoing rule was applied to a situation where the pedestrian was crossing a highway at a point which was not within the limits of any town or city, although, the opinion states, there was then no applicable law giving either the pedestrian or the automobile the right of way. In an exhaustive annotation in 79 A. L. R. 1073, entitled "Duty of pedestrian crossing street or highway as re-

gards looking for automobiles," under subd. IV, p. 1089, this general statement appears: "A pedestrian crossing a street is under no duty to look for automobiles traveling on the wrong side of the road." A large number of cases from nine different states are cited in support of the statement, including the following decisions of this court: *Mickelson v. Fischer,* 81 Wash. 423, 142 Pac. 1160, *supra; Simonson v. Huff,* 124 Wash. 549, 215 Pac. 49.

In the instant case, it was the duty of the respondent to exercise due care for his own safety. The measure of care required of him was dependent upon the attendant circumstances and conditions, one of which was the statute requiring him to yield the right of way to vehicles upon the roadway. However, considering all the elements of his situation, particularly his having passed beyond the center of the road, we think the record supports the trial court's conclusion that respondent was not guilty of contributory negligence.

■ Appellant also maintains that respondent was negligent in failing to avoid a collision when warned of the approach of the automobile by a blast of its horn. The trial court did not make any specific finding of fact as to whether or not the horn was sounded. Adopting the somewhat doubtful conclusion that it was, the only witness, other than appellant, on either side who heard it, testified that the horn blast came at about the same time as the crash which marked the impact. Appellant testified that he sounded the horn about the same time he applied the brakes. The car skidded thirty-five feet before it reached respondent.

Appellant's car, according to the only estimate we have of its speed (by one of his own witnesses), was traveling twenty-five to thirty miles an hour, or about forty feet a second. Clearly, appellant did not sound

his horn in time to give respondent adequate warning. Respondent cannot be charged with contributory negligence for his failure to jump aside quickly enough and far enough to get out of the way of appellant's skidding automobile in the scant second or so which elapsed between the warning horn blast and the collision.

Judgment affirmed.

ROBINSON, C. J., MAIN, STEINERT, and BLAKE, JJ., concur.