[No. 30987. Department Two. January 27, 1950.]

AL BEIREIS *et al., Appellants,* v. JAMES M. LESLIE *et al., Respondents.*[1]

[1]Reported in 214 P. (2d) 194.

*Kennett & McCutcheon* and *Luther C. Martin,* for appellants.

*Eggerman, Rosling & Williams, Joseph J. Lanza,* and *Henry E. Kastner,* for respondents.

HILL, J.—The jury brought in a verdict for the defendant motorist, hereinafter called L, in a personal injury action brought by a pedestrian, hereinafter called B, and judgment of dismissal followed. B appeals, the basic grounds for the appeal being (1) that the trial court erred in submitting the issue of L's negligence to the jury, B's position being that L was guilty of negligence as a matter of law, and (2) that the trial court erred in submitting the issue of B's contributory negligence to the jury, her position being that she could not, as a matter of law, have been guilty of contributory negligence.

These contentions make necessary a somewhat detailed statement of the facts, or what the jury, by the exercise of reasonable inferences, could have found to be the facts.

Primary state highway No. 5, hereinafter referred to as the highway, runs in a northerly and southerly direction and is intersected at an oblique angle by a gravel road known as the Thomas road. Immediately south of this intersection, the highway has a concrete roadway twenty feet in width, with a gravel shoulder on the west side thereof some twelve

feet in width. There is a marked school crosswalk about thirty feet south of the intersection, measured along the west edge of the paved portion of the highway, and twenty feet measured along the east edge, the difference being due to the angle at which the Thomas road intersects the highway.

The collision between B and the car driven by L occurred at 7:45 a. m. on October 13, 1947. B had been riding with her husband, her son, and another gentleman in a southbound car, and that car had pulled entirely off the paved roadway onto the gravel shoulder on the west side of the highway directly opposite the marked crosswalk to let her out.

L was driving north and had crossed over to his left (the west) side of the paved portion of the highway for the purpose of passing another northbound car. B's testimony was that she did not start across the paved portion of the highway but was standing on the gravel shoulder on the west side of the highway when she was hit by L's car. L's testimony was that he saw the parked car in which B had been riding but did not see her get out, that the car had moved forward two or three car lengths on the gravel shoulder when he met it and went by it, and that when he first saw B she was three feet out on the pavement and fifty feet in front of him; that he stepped on the brake and swung to the right, but his left front fender hit her; and that, at the moment of impact, she was four or five feet north of the marked crosswalk.

The jury was instructed that if B was hit while standing on the shoulder off the paved portion of the roadway she was entitled to recover, and by its verdict the jury indicated its refusal to accept her version of what had happened.

It is her present contention, stated in the language of her brief, that

" . . . . it matters little whether . . . [B] was struck while on the shoulder approaching the marked crosswalk or whether she was struck on the roadway four or five feet north of the crosswalk, as testified to by . . . [L].

In either event, she was entitled to the right-of-way. It thus becomes clear that there is and was no conflict in the evidence over any material, vital point."

B's contention was fully and adequately presented to the jury. It is difficult to conceive of instructions more favorable to a pedestrian than those given in the present case:

(a) The jury was instructed, in substance, that if it believed B's testimony and she was in fact on the shoulder of the highway when hit, she was entitled to recover.

(b) The jury was instructed, in substance, that if B was hit while she was within the boundaries of a marked crosswalk on that portion of the highway lying to the west of the center line of the highway, she had the right of way and it was L's duty to slow down and stop his automobile, if necessary, in order to avoid colliding with her. (We are not approving or disapproving this instruction as being applicable to a marked school crosswalk between the hours of five p. m. and eight a. m. We are merely saying that the instruction became the law of this case, and was as favorable as B could ask.)

(c) The evidence indicated that B may have been four or five feet north of the marked school crosswalk when hit; and the jury was instructed that a pedestrian about to cross a public highway where a marked crosswalk is provided need not be exactly and entirely within the boundaries of the marked crosswalk to be entitled to the right of way, and that the pedestrian is entitled to the right of way if in such close proximity to the boundaries of the marked crosswalk that a person acting reasonably and prudently would have a right to step there for the purpose of crossing such public highway. (We do not want to be understood as approving that instruction. The rule as stated therein has not been applied to any right-of-way statute, but only to traffic ordinances, and not to them in the last twenty years. The cases in which it was actually applied involved pedestrians attempting to get on streetcars, and a situation of which it was said:

*"Taking into consideration the peculiar situation at this intersection,* it was not necessary that she be exactly upon

the crossing to be within the rule of an ordinance giving pedestrians the right of way at street crossings." (Italics ours.) *Horney v. Giering,* 132 Wash. 555, 557, 231 Pac. 958.

In our most recent cases, it has not even been urged that being in proximity to a crosswalk might entitle the pedestrian to the right of way. *Strom v. Dobrin,* 29 Wn. (2d) 198, 186 P. (2d) 906; *Allen v. Hart,* 32 Wn. (2d) 173, 201 P. (2d) 145; *Shelton v. Bennett,* 32 Wn. (2d) 529, 202 P. (2d) 461. Here we need only say that the instruction became the law of this case and was favorable to B.)

■ B says that, under the instruction just referred to, she had the right of way even if she was four or five feet north of the crosswalk when hit. With that we cannot agree, as, under the instruction, when a pedestrian goes beyond the limits of the crosswalk, whether or not he or she still has the right of way becomes a question for the jury and depends upon whether the jury believes that a person acting reasonably and prudently would go that distance beyond the limits of the crosswalk. We see no peculiar situation which justifies B's having been four or five feet or any number of feet north of the marked crosswalk; certainly we cannot and will not say that, as a matter of law, she had the right of way because she was within four or five feet of the crosswalk; at best it was a jury question.

■ If we assume, however, that B was on the highway and had the right of way, it does not follow that L was negligent or that B was free of contributory negligence. L was not necessarily negligent in being on his left (the west) side of the paved portion of the highway if he was there for the purpose of passing another car. Rem. Rev. Stat., Vol. 7A, § 6360-75 [P.P.C. § 295-1]. Whether or not, prior to the collision, he had such clearance that he should have resumed his position on his right (the east) side of the paved portion of the highway was a question for the jury. Whether he could or should have seen B on the highway or about to start across it in time to avoid hitting her, was likewise a question for the jury. The negligence of L was submitted to the jury under proper instructions as to his duty to main-

tain a proper lookout ahead and a proper lookout for pedestrians at crosswalks, and to drive to the right of the center of the highway except in the exercise of care while overtaking and passing another vehicle driving in the same direction.

■ Even if B was in or near the crosswalk when hit and had the right of way, it is evident that the question of whether she used reasonable care in observing traffic conditions or walked heedlessly and directly into the path of L's oncoming car, was likewise a question for the jury, on the issue of contributory negligence. The jury could have inferred, from the fact that B was three feet out on the pavement when L first saw her, that she had come suddenly off the shoulder and onto the pavement. There was nothing in B's testimony to meet that inference because she said she never went onto the pavement, and that the jury did not believe. A marked crosswalk is not a sanctuary into which a pedestrian may rush and thereby be absolved from any negligence. *Turnquist v. Rosaia Bros.*, 196 Wash. 434, 83 P. (2d) 353; *Knight v. Pang*, 32 Wn. (2d) 217, 201 P. (2d) 198.

B's exceptions to several instructions submitting the issue of her contributory negligence to the jury are based on the idea contained in her requested instruction No. 18, which reads as follows:

"I instruct you that under the law a pedestrian crossing a street or roadway is under no duty to look for automobiles driving on the wrong side of the road. Such a pedestrian has the right to rely upon motorists observing the laws governing the operation of vehicles."

The failure to give this instruction is also assigned as error.

■ There may be situations on one-way streets or on multiple-lane streets or highways where, with proper limitations as to the meaning of the word "wrong," such an instruction might be applicable; but it certainly and clearly has no application to a highway on which the paved roadway is only twenty feet in width and on which any car passing another going in the same direction must of necessity

cross the center line onto what would be the driver's left side of the road and what B has been pleased to call, again and again, the "wrong side of the road." The constant and emphatic reiteration in a brief that a driver was on the "wrong" side of the road does not make it so. The antonym of "right" is not always "wrong"; it may be "left." L had a right to be on his left side of the highway if he was in the act of passing a car going in the same direction. Rem. Rev. Stat., Vol. 7A, § 6360-75; see, also, Rem. Rev. Stat., Vol. 7A, § 6360-77. [P.P.C. § 295-5]. It is true that when he went to the left of the center line of the highway, L had to exercise due care (Rem. Rev. Stat., Vol. 7A, § 6360-75), and the jury was adequately instructed on his duty in such a situation.

B's contention here is nowhere more explicitly met and exactly answered than in the Pennsylvania case of *Weaver v. Pickering,* 279 Pa. 214, 217, 123 Atl. 777:

"Appellant cites clause 4 [similar to our Rem. Rev. Stat., Vol. 7A, § 6360-75] of said section 25, of the act above cited, P. L. 695, requiring vehicular traffic at all times to keep as close as possible to the right hand side of the street and contends that it absolves a pedestrian from the duty to look in the direction from which such traffic approaches, before or while crossing the opposite side of the cartway. This contention cannot be sustained; it overlooks clause 3 [similar to the exception of Rem. Rev. Stat., Vol. 7A., § 6360-75] of the same section (P. L. 694), which directs a vehicle to turn to the left when passing another going in the same direction. This gives the former the right temporarily to go upon, or if necessary beyond, the center of the cartway, which right, so far as appears, defendant was lawfully exercising when passing the row of standing automobiles. Vehicles would also be justified in turning to the left to avoid an obstruction, like building material; so it cannot be blindly assumed that they will under all conditions and at all times travel only on the right-hand side of the street, as it is not possible to do so."

This court has held that a pedestrian who steps from a curb or other place of comparative safety and walks in front of an approaching vehicle may be guilty of contributory negligence as a matter of law, even if the vehicle is traveling on its left side of the highway. *Hamblet v. Soderberg,*

189 Wash. 449, 65 P. (2d) 1267; *Davis v. Pinkerton,* 199 Wash. 579, 92 P. (2d) 706. In the first of these two cases, the exact location of the defendant's car on the street was not indicated, but it must of necessity have been in part to the left of the center line; in the second, the defendant was driving east on the north half of the street.

In *Farrow v. Ostrom,* 10 Wn. (2d) 666, 117 P. (2d) 963, we said:

"Of course, a pedestrian is chargeable with contributory negligence as a matter of law when, without looking, he steps from the curb into the path of an oncoming car either at an intersection or in the middle of the block. And he will not be heard to say he looked and did not see a car that was in plain sight. *Silverstein v. Adams,* 134 Wash. 430, 235 Pac. 784; *Estill v. Berry,* 193 Wash. 10, 74 P. (2d) 482."

We there pointed out the distinction between cases where the pedestrian had not looked before leaving the curb and where he had looked but no vehicle appeared to be within striking distance. In the former, the pedestrian may be guilty of contributory negligence as a matter of law; in the latter, whether he should have looked again is always a question of fact for the jury.

In the present case, no one except B knows whether she looked to her right (south) before leaving the gravel shoulder and going onto the paved roadway. (She says she did not go onto the paved roadway, but the jury must have found that she did.) She testified to having looked to her left, or the north, for approaching traffic. Her only testimony about looking south after she got out of the car onto the shoulder of the road was, "I was looking to my left [north], and when I looked back . . . [L's] car was right there."

The case on which B relies most strongly is *Cox v. Kirch,* 12 Wn. (2d) 678, 123 P. (2d) 328, where the vehicle which hit the plaintiff pedestrian was in fact on the wrong side of the highway—wrong because the driver had no right to be on his left side of the center of the highway, inasmuch as he

". . . was not passing or attempting to pass another vehicle traveling in the same direction, nor does he claim that there was any obstruction whatsoever on his own side of the road."

In that opinion, we referred to an annotation in 79 A. L. R. 1073, entitled "Duty of pedestrian crossing street or highway as regards looking for automobiles," and we said:

"Under subd. IV, p. 1089, this general statement appears: *'A pedestrian crossing a street is under no duty to look for automobiles traveling on the wrong side of the road.'* A large number of cases from nine different states are cited ·in support of the statement, including the following decisions of this court: *Mickelson v. Fischer,* 81 Wash. 423, 142 Pac. 1160, *supra; Simonson v. Huff,* 124 Wash. 549, 215 Pac. 49."

(This quotation appears in B's brief, and the italics are hers. It is apparently on that italicized statement that her requested instruction No. 18 and her position on contributory negligence are based.)

We have read all of the cases cited in the note from the nine states, and none of them support the giving of an instruction such as B's requested No. 18 in a case such as the present one. Those cases, for the most part, deal with pedestrians who have reached the center line of the street and have transferred their attention from their left to the right, and have then been hit by a car coming from their left. Pedestrians who have reached the center line of the street or highway ordinarily have neither the time nor the opportunity for observation of traffic in both directions available to an individual who enters the highway from a place of comparative safety. Those cases also make clear in practically every instance that the car on its left side of the street was actually on the wrong side of the street, because the driver was violating a statute or ordinance, or because he had no legitimate excuse for being there, as in the *Kirch* case, *supra.* And those cases, with only two or three exceptions, go no farther than to hold that the failure of a plaintiff to look for cars which may be on their left side of the highway is not contributory negligence as a matter of

law, but that it presents a question of fact for the jury, and the test is whether a reasonably prudent person would have looked under the circumstances and conditions then existing.

One of those exceptions was the Michigan case of *Siegel v. Detroit Cab Co.*, 246 Mich. 620, 225 N. W. 601, which was distinguished in the later Michigan case of *Brodie v. Detroit*, 275 Mich. 626, 267 N. W. 576. In the latter case, the court rather caustically disposed of Brodie's contention "that he had no duty to watch for traffic on the wrong side of the street." Brodie had alighted from a bus the left side of which was close to the center of the street. He walked in front of the bus and was hit by another bus headed in the same direction, but on what would be its left side of the street. The court said:

"Here the plaintiff neglected the legal duty to look for traffic before he started to cross the street. He knew that vehicles passed others on the left side. It was lawful for them to do so. There was no legal duty of defendants not to pass the bus on the left side which justified plaintiff in assuming the street to the north was clear and in failing to look. . . . If he had looked he would have seen the defendant's bus while he was still in a place of safety. We think the circumstances required the court to hold plaintiff guilty of contributory negligence as a matter of law."

Our own case of *Simonson v. Huff*, 124 Wash. 549, 215 Pac. 49, is typical of the cases in the portion of the annotation above referred to. It was there held that the question of the negligence of a stage driver proceeding on his lefthand side of the street in a residential district, and the contributory negligence of the pedestrian at an intersection in failing to look, after he reached the center of the street, for approaching vehicles proceeding on their lefthand side of the street, were both questions for the jury.

The other Washington case cited in the portion of the annotation referred to is *Mickelson v. Fischer*, 81 Wash. 423, 142 Pac. 1160. In that case, an automobile was driven on the driver's left side of the street to pass a streetcar proceeding in the same direction. A passenger who had alighted

at the front end of the streetcar and passed in front of it, then walked in front of the approaching automobile and was hit. The case expressly negatives the idea that it is negligence *per se* for a driver to proceed on his lefthand side of the street, and it was held that the question of his negligence in so doing was for the jury. It was also held that whether the pedestrian was guilty of contributory negligence by reason of her failure to look for vehicles approaching on their lefthand side of the street after she had crossed in front of the streetcar, was also a question for the jury. (Note: In similar circumstances, the pedestrian was held to be guilty of contributory negligence as a matter of law in *Brodie v. Detroit, supra.*)

These two Washington cases are both contrary to B's position here, that L was negligent as a matter of law, and that B, as a matter of law, could not be guilty of contributory negligence.

 The jury in the present case would certainly have been justified in finding that B, in the exercise of ordinary prudence and caution, should have looked to the south before starting across the highway under the circumstances here existing; and all of her exceptions predicated upon the assumption that as a matter of law she was under no duty to look to her right are without merit. In fact, it seems to us that B's contributory negligence was almost conclusively established. We do not see how a pedestrian can be said to be justified in failing to look in both directions before attempting to cross a traveled roadway which is only twenty feet in width; and, if she looked, she must have seen L's car approaching only a short distance away, and she would be equally negligent in attempting to pass in front of it. *Peterson v. Millnitz*, 119 Neb. 365, 229 N. W. 12; *Watson v. Lit Bros.*, 288 Pa. 175, 135 Atl. 631.

From the foregoing, we have tried to make it clear that there are three inherent fallacies in B's position that L was guilty of negligence as a matter of law, that B was not guilty of contributory negligence as a matter of law, and that, hence, there was nothing here for a jury to determine

except the amount of B's damages. Actually, (1) L was not, as a matter of law, on the "wrong" side of the road; (2) B was not, as a matter of law, excused from looking to her right (the south) before starting across the highway; and (3) B did not have the right of way over L as a matter of law because she was within four or five feet of the crosswalk when hit. The trial court submitted all three of those issues to the jury, and B was entitled to nothing more, if so much.

What we have said heretofore disposes of B's exceptions to instructions numbered 4 and 17, and to the failure of the court to give requested instructions numbered 1, 9 and 18. We will now direct our attention to the other instructions and failures to instruct which B contends to be erroneous.

Instruction No. 18 was as follows:

"The laws of the State of Washington, in effect at the time here in question, further provide:

" 'Pedestrians crossing a roadway other than at intersection crosswalks shall yield the right of way to all vehicles upon the roadway. . . . Notwithstanding the provisions of this section, every operator of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway and shall give warning by sounding the horn when necessary and shall exercise all proper precaution upon observing any children or any confused or incapacitated person upon the roadway.'

"Relative to this statute or law, you are further instructed:

"(1) That a 'pedestrian,' as used in the law, means a person using the street or highway while afoot;

"(2) That while the drivers of vehicles have the right of way over pedestrians crossing the roadway at places other than at intersection crosswalks, never the less all rights of way are relative, and it is the duty of both pedestrians and automobile drivers to exercise due care to avoid collisions;

"(3) The primary duty of avoiding collisions between vehicles and pedestrians crossing the roadway at points other than at intersection crosswalks rests upon such pedestrian;

"(4) That when a pedestrian crosses or attempts to cross any public highway at a place other than at an intersection crosswalk, the law requires such pedestrian to keep and

maintain such lookout and observation for approaching vehicles as an ordinarily prudent person would use in the same or similar place under the same or similar conditions.

"(5) It is the duty of an automobile driver to exercise reasonable care to avoid a collision with such a pedestrian after he or she becomes aware of the presence of such pedestrian upon the roadway."

■ B's argument on this instruction in the brief goes far beyond the exceptions taken. The only exceptions were to subds. (3), (4) and (5), and the instruction down to subd. (3), at least, becomes the law of the case because no exception was taken thereto.

As to subds. (3) and (4), the only matter directed to the attention of the trial court was B's repeated contention that there is no duty upon a pedestrian, whether he be crossing between intersections or at an intersection, to anticipate that a driver will be approaching him on the driver's left side of the road. Our disagreement with that view has been expressed heretofore.

The exception to subd. (5) is as follows:

"And sub-division 5 of No. 18 we think is wholly erroneous, wherein the jury are told that the automobile driver has the duty to use reasonable care after he or she becomes aware of the presence of such pedestrian upon the roadway.

"We think the duty of the driver to use reasonable care is present at all times when he is driving to his left of the center of the highway, without regard to whether the pedestrian in question is at the crosswalk or between intersections."

■ It must be remembered that the pedestrian referred to in subd. (5) is one who the jury has found is required to yield the right of way to all vehicles upon the roadway. There is nothing in the instruction that militates against an instruction previously given that, in driving to the left of the center of the highway, L would be guilty of negligence if he was not exercising due care. And subd. (5) merely added an additional duty (if the jury had determined that L had the right of way) toward one who was required to yield the right of way. We find no merit in B's assignment of error as to instruction No. 18.

Instruction No. 19 and a portion of No. 21 are likewise the subject of assignments of error. Instruction No. 19 in its entirety and No. 21 so far as material are quoted herewith:

"No. 19.

"If you find the accident occurred at a time and place on the paved, improved, or proper driving portion of the highway, when the plaintiff wife was attempting to cross the highway on foot at a place other than at a crosswalk, then you are instructed that the automobile of the defendants had the right of way over the pedestrian, and the driver of the automobile at such time and place had the superior right to proceed and also the right, in the absence of knowledge or notice to the contrary, to assume that the pedestrian attempting to cross the highway in front of him at such time would yield to him the right of way. A failure to yield the right of way where it is given by law is prima facie negligence, and if as a proximate result of the failure to yield such right of way, an accident occurs and the person not having the right of way is injured, such person cannot recover damages on account of such accident.

"You are further instructed that a pedestrian who crosses the highway between intersections has imposed upon her a greater degree of care because of this right of way given to vehicles and that as a matter of law, it was the duty of the plaintiff wife in this case in crossing the highway between intersections, if you find she did cross between intersections, to be constantly on the lookout to avoid danger, and if you believe that the failure of the plaintiff wife to keep such a lookout contributed to her injuries, then you will find for the defendants.

"You are instructed that if plaintiff wife stepped from behind another car and into the path of an approaching vehicle without taking any precautions by way of looking or otherwise for her own safety, such person is guilty of contributory negligence."

"No. 21.

"While as to a roadway locality such as that involved in this case, a pedestrian has a right to cross the road at any point, these factors of consideration enter into the question of what conduct is required of him in the exercise of ordinary care. First: if he crosses at a point other than within a marked crosswalk or within an unmarked crosswalk at an intersection, the law requires him to yield the right of

way to all vehicles on the roadway so near as to constitute an immediate hazard. . . ."

The exception to the first paragraph of instruction No. 19 is:

"No. 19, the first paragraph of it we think was erroneously given in this case for the reason that the court at no place in the instructions defined the word 'crosswalk', which is used repeatedly in instruction No. 19. There was a definition of 'marked crosswalk,' but no instruction telling the jury that by state law a crosswalk extends across every intersection for a distance of ten feet back from the prolongation of the lateral curb lines.

"In other words, 'crosswalk' as used in instruction No. 19, without being defined, we think was confusing to the jury and not applicable to the evidence as developed in this case."

(The statutory requirement that pedestrians yield the right of way to vehicles at points other than at intersection crosswalks has been set forth heretofore in instruction No. 18.)

There was, at the time this accident occurred, a conflict in our right-of-way statute as it related to pedestrians and vehicles. Rem. Rev. Stat., Vol. 7A, § 6360-99 [P.P.C. § 295-49], first directed the operator of a vehicle to yield the right of way, slowing down or stopping if need be, to so yield to any pedestrian crossing the roadway *within a marked crosswalk* or within any unmarked crosswalk at an intersection. It then directed that pedestrians crossing roadways at points other than at intersection crosswalks should yield the right of way to all vehicles upon the roadway. The statute failed to take into consideration that there may be marked crosswalks at places other than intersections, and that a pedestrian may be on a marked crosswalk and thereby entitled to the right of way, and may, at the same time, be crossing the roadway "other than at intersection crosswalks," and, hence, construing the statute literally, required to yield the right of way to all vehicles upon the roadway. (This conflict was corrected by the Session Laws of 1949, chapter 196, § 2, p. 574.)

■ The trial court avoided the pitfall represented by this state of the law, saying in instruction No. 10 that, if B was in the marked crosswalk when hit, she had the right of way, and by saying in the first paragraph of instruction No. 19 that if the jury found that she was on the highway at a point other than at a crosswalk, L had the right of way. The objection made to this paragraph, that the failure to define "crosswalk" was confusing, is without merit. To have defined "intersection crosswalk" might have been confusing and would have served to accentuate the then existing conflict in the statute. By using the word "crosswalk" the court could not have confused the jury because the marked school crosswalk was the only crosswalk mentioned in the evidence, and the only one the jury knew anything about.

We see no error in the first paragraph of instruction No. 19 as applied to the present case, and what we have said here applies also to the assignment of error relative to instruction No. 21.

■ Directing our attention to the second paragraph of No. 19, we find that the exception thereto is as follows:

"The second paragraph of that instruction, stating it was the duty of the plaintiff wife, in the event they found she was crossing between intersections, we think it is an incorrect statement of the law that she must be constantly on the lookout to avoid danger. We think there is no such duty as to a car approaching on the driver's left of the center of the highway.

"And, second, we don't think there is any evidence from which the jury could find she was not either within the marked crosswalk or near the statutory crosswalk at the intersection, even under the defendant's testimony. She is squarely in that one under the defendant's testimony."

We think the instruction correctly stated the law as to B's duty if the jury found that she did not have the right of way; and we again voice our disagreement with B's view that she had, as a matter of law, no duty to look out for a car approaching on the driver's left of the center of the highway, and that she had the right of way as a matter of law

if she was in proximity to the marked crosswalk. The reference in the exception to the possibility that B was in "the statutory crosswalk at the intersection" (referring to the intersection of the highway and the Thomas road) must be ignored in view of B's repeated statement that there is no intersection crosswalk in the case, and the statement in her brief heretofore quoted in this opinion that it is without dispute that she was within four or five feet of the marked school crosswalk.

 The last paragraph of instruction No. 19 is excepted to as follows:

"The last paragraph of No. 19 we except to on the ground there is no evidence from which the jury could reasonably find that this plaintiff stepped from behind another car into the path of an approaching vehicle. For that reason we think it was beyond the issues and improper to give it."

That B was at some time behind the car from which she had alighted and which was proceeding south on the west shoulder of the right of way, is an inescapable inference, although the car may have started forward before she went behind it. How far it had moved forward when she stepped onto the pavement (as the jury found she did) is in dispute. L testified that he was within two hundred feet of the car driven by B's son when it started forward, and that it had moved forward only two or three car lengths when he met it and went by it, and that, when he first saw B, she was three feet out on the highway and fifty feet ahead of him. That she did not look to her right (the south) before starting across the highway, is also an almost inescapable inference from her testimony. It has been B's insistent contention throughout that she was under no obligation to look in that direction before starting across the highway. There was, we feel, ample evidence, or ample evidence on which to base reasonable inferences, to warrant the portion of the instruction now under consideration.

Instruction No. 23, as to the measure of the damages, was also made the basis for an assignment of error, but, in view of the disposition we make of the cause, it need not be considered.

We come now to the assignment of error predicated on the failure to give requested instructions numbered 11 and 19. Requested instruction No. 11 was to the effect that the maximum lawful speed limit permitted automobiles at the time and place of the collision between B and L's car was twenty miles an hour. This was based on Rem. Supp. 1947, § 6360-64(2)(i) [P.P.C. § 296-1] (1949 statute not material here), which read as follows:

"(2) Subject to the provisions of subsection (1) of this section and except in those instances where a lower maximum lawful speed is provided by this act or otherwise, it shall be unlawful for the operator of any vehicle to operate the same at a speed in excess of the following: . . .

"(i) Twenty (20) miles per hour when operating any vehicle upon a public highway of this state outside incorporated cities and towns when passing any schoolhouse on school days, or school or public playground between the hours of 8:00 A. M. and 5:00 P. M., or when crossing any marked school crossing during such hours or while within any marked school zone, such zone to extend three hundred (300) feet in either direction from any marked school crossing."

 B urges that twenty miles an hour limitation is operative at all times within any marked school zone. It may be conceded that there is a basis for that interpretation and that the wording of the section should be clarified. B's interpretation of the section, if correct, would lead to the seemingly ridiculous result that, while outside of incorporated cities and towns marked school crossings could be crossed at fifty miles an hour from five p. m. to eight a. m., the marked school zone extending "three hundred (300) feet in either direction from any marked school crossing" must be traversed at twenty miles an hour both day and night.

However, there is no evidence that this collision occurred in a marked school zone. The only highway signs posted called attention to a school crossing. Marked school crossings frequently are (as this one is) some distance away from the school itself, and signs calling attention to a school crossing do not cause the three hundred feet on either side

of the school crossing to be a marked school zone. The trial court properly refused this instruction, and no other instruction as to speed was requested.

■ Requested instruction No. 19 would, in effect, have told the jury that, if L was driving his car in such a position in proximity to another automobile to his left (in this case the car from which B had alighted) that his view of the crosswalk and any pedestrian thereon was made ineffective or blocked out, it would constitute negligence. B relies upon the case of *Ross v. Johnson*, 22 Wn. (2d) 275, 155 P. (2d) 486, wherein we approved a somewhat similar instruction. The fact pattern in that case and that in the instant case are quite dissimilar. There the defendant driver's view of a portion of the intersection was completely obscured or blocked out by a car ahead of him traveling in the same direction. We emphasized the fact that the instruction was approved only because of the peculiar circumstances of that case, and said:

"We readily concede that it is not necessarily negligence as a matter of law in all instances for a driver to operate his automobile in such relative position and proximity to other automobiles that his view of a crosswalk at an intersection ahead of him and of the pedestrians thereon is for a time obscured. We may even concede that at certain times and locations and under certain conditions such act would not constitute negligence at all, either in law or in fact."

In the present case, L's view of the entire marked crosswalk was not obscured at any time after he pulled abreast of the car on his right which he was engaged in passing. The car referred to in the requested instruction was on his left, on the west shoulder and off the pavement, and could not have obscured his view of the crosswalk, though it could have and doubtless did for a time obscure his view of the gravel shoulder adjacent to the crosswalk. The instruction requested does not deal with that situation, but with the blocking of L's view of the crosswalk and any pedestrian thereon. There was no evidence to justify the giving of the requested instruction, and the trial court did not err in refusing to do so.

After a careful consideration of all of the instructions, we are of the opinion that, if there was any error therein, it was beneficial to and not detrimental to B. The judgment of dismissal based on the jury's verdict is affirmed.

SIMPSON, C. J., ROBINSON, MALLERY, and HAMLEY, JJ., concur.