[No. 29340. *En Banc*. February 1, 1945.]

GEORGE A. ROSS, *Respondent*, v. HAROLD T. JOHNSON, *Appellant*.[1]

[1]Reported in 155 P. (2d) 486.

*Shank, Belt, Rode & Cook,* for appellant.

*Kahin & Carmody,* for respondent.

STEINERT, J.—This was an action for damages for personal injuries sustained by the plaintiff, a pedestrian, who, while traversing a crosswalk at a street intersection, was struck and severely injured by an automobile driven by the defendant. The cause was tried to a jury, which returned a verdict for the plaintiff. Judgment was entered on the verdict and the defendant appealed. The sole question presented on the appeal is whether the trial court erred in giving a certain instruction, which we shall quote in full a little later.

The accident out of which this action arose occurred at about one-thirty o'clock on an October Sunday afternoon at the intersection of West Spokane street and West Marginal place, both of which are public streets in the city of Seattle.

West Spokane street is an arterial highway extending in an easterly and westerly direction, and consists of two roadways, each approximately forty feet wide, separated by a strip of ground which was formerly the street railway right of way in that vicinity. West of the intersection this intervening strip is approximately twenty feet wide, and east of the intersection it is thirty-five or forty feet wide. However, both roadways maintain a constant width of approximately forty feet on each side of the intersection. The southerly roadway is used exclusively by east-bound traffic, and the northerly roadway exclusively by west-bound traffic. Each roadway was paved to a width equivalent to a three-lane highway.

West Marginal place approaching West Spokane street from the south is approximately fifty feet wide and ex-

tends generally in a northwesterly and southeasterly direction. As it enters the intersection, however, West Marginal place flares out in both an easterly and westerly direction to a width of about one hundred fifty feet. The area within the intersection is thus of a somewhat irregular shape, but, from the photographs in evidence, it appears to be paved throughout its entire space.

At the southeast corner of the intersection a crosswalk approximately ten feet wide, and marked by parallel yellow lines, extends in a slightly northwesterly direction along the east margin of the intersection across the southerly roadway of West Spokane street to the thirty-five foot strip of ground dividing the two roadways. Beyond this intervening strip a similar crosswalk extends northerly across the northerly roadway of West Spokane street. Since the accident occurred in that portion of the intersection included within the southerly roadway, our further description of places and events will be largely with reference to that roadway.

At the northerly end of the crosswalk on the southerly roadway, that is to say at a point common to that crosswalk and the intervening strip of ground, is a traffic sign facing west and bearing the legend "Pedestrian Crossing. Stop When Occupied." At the southwest corner of the intersection is another sign, also facing west, bearing the legend "PEDESTRIAN CROSSING AHEAD." At a point about one hundred seventy-five feet west of the intersection is a third sign, likewise facing west, bearing the inscription "20 MILE LIMIT"; another sign bearing a similar legend is stationed about three hundred feet further west.

On the day in question, appellant was driving his Plymouth sedan from his home in West Seattle, intending to go to Lake Union. He was accompanied by his brother and sister-in-law, who were sitting with him in the front seat, and a married couple, who were occupying the rear seat. At Avalon way he turned into West Spokane street, proceeding in an easterly direction. At a point approximately four hundred eighty feet west of the intersection of West Spokane street and West Marginal place, appellant passed

two automobiles which were entering, or had just entered, West Spokane street from the south along Delridge way. The occupants of these cars testified variously as to the speed at which appellant was traveling. Some of them estimated it at about twenty-five miles an hour; others placed it at forty to fifty miles an hour. Appellant and the occupants of his car all testified that he was traveling at a speed of only fifteen or twenty miles an hour. Other than as to the rate of speed at which appellant was driving, there is no conflict in the evidence concerning the events which occurred up to the time of the collision.

As appellant proceeded eastwardly along West Spokane street toward West Marginal place, he occupied what is designated as the inner lane of the southerly roadway, that is the lane nearest the northerly curb of that roadway. At a point about three hundred feet west of the crosswalk on the east side of the intersection, appellant either overtook, or was overtaken by, another automobile traveling in the second, or middle, lane, that is the lane to the right of the appellant. From that point on to the place where the collision occurred, the two cars traveled in the same relative position with respect to each other, the front half of appellant's car being abreast of, and about three to five feet distant from, the rear half of the other car, which is referred to in the record as the "unknown car." Because of this situation with reference to the relative positions of the two automobiles at the time of their simultaneous approach to, and movement across, the intersection, appellant's view of the crosswalk was to a large extent blotted out and he was unable to see any pedestrian who might have been crossing the street until such person had reached a point in the inner lane of the southerly roadway almost directly ahead of appellant.

In the meantime, respondent had stepped from the curb at the southeast corner of the intersection and was proceeding northerly along the crosswalk on West Spokane street toward the intervening ground between the two roadways. He passed safely in front of the "unknown car" approaching from the west along the middle lane, but almost

instantly thereafter was struck by appellant's car traveling in the same direction and maintaining its original relative position with reference to the car on its right-hand side as previously described. At the time of the impact, respondent was within a few feet of the curb on the northerly side of the roadway.

It is conceded by the appellant that he did not see the respondent upon the crosswalk at any time until respondent was immediately in front of him, at a distance of about four feet. Appellant at once applied his brakes and concededly did everything he could at the time in an endeavor to avoid colliding with the pedestrian. He was unable to bring his car to a stop before striking the respondent, however, and in consequence of the impact respondent was thrown forward a distance of approximately twenty-five feet. Appellant himself so testified.

In view of the question presented upon this appeal, we shall refer to certain other admissions made by the appellant, concerning which there is no dispute. We quote from his testimony as follows:

"Q. You have driven on this street frequently, haven't you? A. Yes sir. Q. And you knew that there was a sign that says 20 miles an hour limit speed back at Delridge Way as you came down there, didn't you? A. Yes sir. Q. And there is another one that says 20-miles limit up a little further? Didn't you know that? A. Yes sir. Q. And you knew that the next one warned you of a pedestrian crossing ahead? A. Yes sir. Q. And you knew when you got up here further that you could see a sign which says, 'Pedestrian crossing. Stop when occupied'? A. That is right. Q. You didn't stop, did you, when it was occupied by a pedestrian on that day, did you? A. I didn't see any business to. Q. You did not stop, did you? A. No. Q. You knew that you could not see persons because of the car that was approaching it, didn't you. A. That is right. Q. Because it made that approach practically a blind approach if another car was there, didn't you? A. Yes sir. Q. And you knew when you approached that way you wouldn't be able to see whether there was anybody there or not, didn't you? A. That is right. Q. And you didn't care, did you? A. Yes, I cared. Q. You knew it was a dangerous place? A. Yes sir. . . . Q. Did you see the

plaintiff [respondent] there before you hit him? A. No. Q. What kept you from seeing him? A. This other car which was driving behind one car and ahead of me. Q. What is that? A. This other car to the right hand side of me approximately behind the car which was ahead, which obstructed my view of seeing anybody on the crossing. Q. You saw the man as he came up next to the curb and hit him? A. Yes, the minute I saw him come out from in front of that car I saw him. . . . Q. You say you could not see him before that because of another automobile in the way? A. That is right. Q. And where was the other automobile? A. I was going along on the left hand side of the street, in the outside [inner] lane, and this other car in the next lane to me, approximately a half a car length ahead of me, and the car was on the right hand side of me, was just about on top of this cross walk, and I was approximately a half a car length behind him when Mr. Ross jumped out in front of this other car. Q. He jumped? A. He didn't jump, but he was in a hurry. . . . Q. What made you think that was a dangerous corner? A. It is an obstructed corner and a transfer point for the bus. Q. You knew you were supposed to stop there when a pedestrian was on the cross walk at the sign, didn't you? A. Yes sir. Q. You didn't stop there, did you? A. No, because I did not see anybody."

In his answer, appellant pleaded contributory negligence on the part of the respondent in nine specified particulars, and that issue was fully presented to the jury by several instructions given by the trial court. Appellant concedes that the evidence with respect to his own negligence and also with respect to the respondent's contributory negligence justified a submission of both those questions to the jury. The verdict of the jury resolved those issues in favor of the respondent, and appellant does not challenge the validity of the verdict except upon the one ground hereinafter noted.

The instruction which the appellant challenges as erroneous, and upon which all his assignments of error are based, reads as follows:

"It is the duty of persons operating vehicles upon the public highways, whether they are operating upon an arterial highway or not, to keep a reasonable lookout for

pedestrians when approaching a crosswalk, *and if you find that the defendant, Harold T. Johnson,* failed to keep such a reasonable lookout or that he *was driving his automobile in such a position in proximity to another automobile to his right that his view of the crosswalk and any pedestrians thereon was made ineffective or blotted out, this would be negligence, and if* his failure to keep a reasonable lookout or *the position in which he placed himself behind or beside the other car to his right made it impossible for him to see the plaintiff on the crosswalk, such negligence would be a proximate cause of the injury,* and if you find furthermore that the defendant was free from contributory negligence under all the facts and circumstances you will find a verdict in favor of the plaintiff."

We have italicized those portions of the instruction which the appellant assails as being incorrect. His contention is that the instruction is erroneous in two respects: (1) in declaring that the act of the appellant in driving in such relative position and in such close proximity to another automobile as to render ineffective or blot out his view of the crosswalk and any pedestrian thereon constituted negligence *as a matter of law*; and (2) in declaring further that if the position in which the appellant placed himself made it impossible for him to see the respondent on the crosswalk, such negligence would *as a matter of law* be a proximate cause of the injury. In other words, appellant contends that the questions of negligence and proximate cause adverted to in the instruction should have been submitted to the jury as questions of fact, and not as propositions of law. We shall consider the two contentions in the order designated above.

Neither counsel has cited any case wherein the facts are similar to those presented here, that is, where the driver of an automobile approached and crossed a street intersection while occupying and maintaining such a position in relation to other automobile traffic that his view of a crosswalk ahead and of the pedestrians thereon was obstructed or blotted out and, because of his inability to see a pedestrian on the crosswalk, he ran into and injured the pedestrian. We, too, have been unable by independent search to find any case close enough in point of fact to be

of any material aid to us in the consideration of the questions presented by appellant's assignments of error. The questions are thus of first impression, so far as this court is concerned.

Upon his first contention, appellant presents a very ingenious argument by employing an illustration of three automobiles traveling in the same direction upon a three-lane strip of highway, the automobile in the outer lane being slightly ahead of the one in the middle lane, and the latter being in turn slightly ahead of the automobile in the inner lane. Counsel argues that, under the rule announced in the trial court's instruction, the car in the middle lane would be required to stop until the car in the outer lane had crossed the intersection, and that the car in the inner lane would likewise have to stop until the car in the middle lane had gotten beyond the intersection. In the meantime, however, says the appellant, the two cars which had stopped upon the highway will have obscured the view to the left of drivers of other cars approaching in the outer lane, and therefore these latter cars must likewise come to a stop until the cars in the middle and inner lanes respectively have crossed the intersection. Appellant then concludes that the result of such a confusing situation would be that only one car at a time could ever proceed over a pedestrian crossing even though no pedestrian were then attempting to use it.

The illustration does not take into consideration the distance between the approaching automobiles and the crosswalk at an intersection, nor the character of the intersection, nor the rate of speed at which the automobiles are nearing the intersection, nor the fact that in this case a pedestrian actually was upon the crosswalk, nor the law with reference to the right of way of pedestrians at street intersections. Indeed, if appellant's contentions were sustained, a pedestrian, though having the right of way over an automobile which he sees approaching him at a safe distance upon a three-lane one-way highway, would still be required to anticipate that, even if he succeeded in safely passing in front of that automobile, he might never-

theless be run over by a second or third automobile traveling in the middle or inner lane but screened temporarily from his view by the automobile nearest to him.

Furthermore, if three automobiles maintaining the same relative positions with respect to each other as that suggested in appellant's illustration should approach, enter, and cross a street intersection while a pedestrian having the right of way was properly crossing the street, the drivers of the respective automobiles might very well, under certain circumstances, be required to do the very thing which appellant considers objectionable, namely, proceed across the pedestrian lane of travel one at a time if that were necessary in order to enable the pedestrian to exercise his right of way and get safely across the street.

We readily concede that it is not necessarily negligence as a matter of law in all instances for a driver to operate his automobile in such relative position and proximity to other automobiles that his view of a crosswalk at an intersection ahead of him and of the pedestrians thereon is for a time obscured. We may even concede that at certain times and locations and under certain conditions such act would not constitute negligence at all, either in law or in fact. The point we here wish to make is (1) the facts and circumstances involved in this case are not in dispute; and (2) the situation presented thereby, and to which the instruction refers, is a very definite, concrete one.

■ Instructions must always be considered and construed in connection with, and in the light of, the issues and evidence in the particular case. *Allend v. Spokane Falls & N. R. Co.,* 21 Wash. 324, 58 Pac. 244; *Harkins v. Seattle Electric Co.,* 53 Wash. 184, 101 Pac. 836; *Wheeler v. Hotel Stevens Co.,* 71 Wash. 142, 127 Pac. 840, Ann. Cas. 1914C, 576; 1 Randall's Instructions to Juries 973, § 531; 1 Blashfield's Instructions to Juries (2d ed.) 467, § 194; 1 Branson, Instructions to Juries (Reid's 3d. ed.) 1, § 1. In the *Allend* case, *supra,* this court said:

"An instruction must always be construed in the light of the evidence in the particular case in which it is given, and, if applicable to the evidence of that case, it will not

be held erroneous, even though conditions may be conceived where it would not be a correct statement of the law."

The issue in this case, so far as the present appeal is concerned, relates simply to the duty which rested on the appellant in approaching a certain pedestrian crossing. There is no dispute in the evidence as to the circumstances and conditions connected with that particular crossing as described above, nor is there any dispute as to how and why the collision occurred. Appellant was familiar with the locality and knew that it was a dangerous corner. He was well aware of the various traffic signs, not only with reference to the speed limit, but also with reference to the pedestrian crossing ahead. He voluntarily approached and crossed the intersection in such a position and manner with reference to other automobile traffic as to make his advance virtually a blind approach so far as pedestrians were concerned, for he knew that in maintaining such a position he would be wholly unable to see any pedestrian using the crosswalk until such person should arrive at a point immediately ahead of him. He also knew, of course, that, in driving in that manner, if he did not stop his automobile instantly upon seeing a pedestrian immediately ahead of him a collision would occur. Being conversant with all these conditions and circumstances, he nevertheless drove forward a distance of not less than three hundred feet into and across the intersection, maintaining a constant rate of speed and the same relative proximity to the automobile on his right, which obstructed his view of pedestrians on the crossing, until, when an emergency arose, he was wholly unable to cope with it. The instruction given by the trial court must be considered and construed in the light of the foregoing issue and undisputed evidence.

In another instruction given by the trial court, to which no error is now assigned, the court advised the jury that

"Where traffic control signals are not in place or in operation, the operator of a vehicle shall yield the right of way, slowing down or stopping, if need be to so yield, to any pe-

destrian crossing the roadway within a marked crosswalk or within any unmarked crosswalk of any intersection."

This identical language is included in Rem. Rev. Stat., Vol. 7A, § 6360-99 [P. C. 2696-857], as one of the rules of the road. Such statute or municipal ordinance constitutes a rule of conduct to be observed and obeyed by those using the public highways.

By the great weight of authority, the violation by the driver of an automobile of traffic regulations prescribed by the state or municipality and embodying express commands governing the use of such vehicles constitutes negligence *per se*. 4 Blashfield, Cyclopedia of Automobile Law and Practice (Perm. ed.) 437, § 2681. This court is definitely committed to that rule. Many of our decisions are assembled in the recent case of *Portland-Seattle Auto Freight v. Jones,* 15 Wn. (2d) 603, 131 P. (2d) 736, wherein it is said:

"Statutes or municipal ordinances prescribing the rules of traffic establish rules of conduct which must be obeyed. They are standards for testing negligence and contributory negligence. The rule in this state is that a violation of those rules constitutes negligence *per se*."

The opinion in the cited case then quotes with approval from *Johnson v. Heitman,* 88 Wash. 595, 153 Pac. 331, as follows:

"This court is definitely committed to the rule that 'a thing which is done in violation of positive law is in itself negligence,' in the absence of pleading and proof of such peculiar facts as would tend to justify the violation. [Citing cases.]

"In consonance with that rule, this court, in common with others, has repeatedly held that, in the absence of evidence of circumstances tending to excuse by making such a course reasonably necessary, a failure to observe the law of the road, resulting in injury, is negligence as a matter of law."

The language quoted from the *Johnson* case, *supra*, is, in our opinion, peculiarly applicable to the case at bar. Appellant failed to yield the right of way to the respondent, in violation of a positive rule of law, and there was neither

pleading nor proof of such peculiar facts as would tend to justify the violation. On the contrary, as stated before, appellant elected to drive into a dangerous zone, well knowing that it was such, and cognizant of the fact that his manner of driving across the intersection rendered it impossible for him to see pedestrians on the crosswalk in time to avoid striking them. Appellant's act was not a mere technical violation of the ordinance and statute, nor was it the result of some cause or thing beyond his control. It was his own voluntary act, committed with full knowledge of what, under the circumstances, might naturally be the consequences.

In *Jurisch v. Puget Transp. Co.,* 144 Wash. 409, 258 Pac. 39, this court upheld the following instruction as against an objection that it deprived the defendant driver of the defense that he was not negligent and also of the defense of contributory negligence, and made him an insurer of the safety of other users of the highway:

"The city ordinance of the city of Tacoma provides as follows: Vehicles shall have the right of way between street intersections, pedestrians at cross walks and designated cross walks. This ordinance places upon the operator of an automobile when approaching a cross walk or a designated cross walk [the duty] to continuously look at said cross walk to avoid running into or upon any pedestrian crossing said street at said cross walk, and to so operate his car as not to run into or upon said pedestrian. *Failure to do this is negligence on the part of the defendant for which the defendant is liable.*" (Italics ours.)

In *Anselmo v. Morsing,* 166 Wash. 111, 6 P. (2d) 377, 9 P. (2d) 100, this court approved the following statement made in *Johnson v. Johnson,* 85 Wash. 18, 147 Pac. 649:

"If the conceded right of way means anything at all, it puts the necessity of continuous observation and avoidance of injury upon the driver of the automobile when approaching a crossing."

The same thought is expressed in *Farrow v. Ostrom,* 10 Wn. (2d) 666, 117 P. (2d) 963.

If it is the law that a pedestrian has the right of way at crosswalks and that it is the duty of the operator of a

motor vehicle to yield the right of way, slowing down or stopping, if need be, to so yield to any pedestrian while crossing the roadway within a crosswalk of any intersection, and if it is the duty of a driver approaching a crossing to maintain continuous observation thereof in order to avoid injuring a pedestrian, and if the failure on the part of such driver to comply with these duties constitutes negligence *per se,* then, it is equally negligence *per se* for that same driver voluntarily to place and maintain himself in such a position upon the highway that his observation of pedestrians on the crosswalk is made impossible, in consequence of which he is prevented from discharging his duty to yield the right of way to the pedestrian.

Under the circumstances shown by the facts of this case, it was not error for the court to instruct the jury that if it found that appellant was driving in such a manner that his view of the crosswalk and any pedestrian thereon was made ineffective, such acts on the part of the appellant would constitute negligence.

The second contention made by the appellant relates to the matter of proximate cause. It will be recalled that the court instructed the jury that, if the position in which appellant placed himself made it impossible for him to see the respondent, such negligence would be *a* proximate cause of the injury.

It is true, as appellant contends, that usually the question of proximate cause is for the jury, and it is only when the facts are undisputed and the inferences therefrom are plain and incapable of reasonable doubt or difference of opinion, that it may be a question of law for the court. *Schofield v. Northern Pac. R. Co.,* 4 Wn. (2d) 512, 104 P. (2d) 324, and cases therein cited.

The case at bar falls within the exception, rather than within the general rule, above noted. The facts with reference to the happening of the accident are undisputed, and, in our opinion, the inferences therefrom are plain and incapable of reasonable doubt or difference of opinion. It is established beyond question, we think, by appellant's own testimony, set out above, that appellant ran into the re-

spondent because he did not see him in time to avoid colliding with him, and that the reason appellant did not see the respondent was because of the position in which appellant maintained his automobile while approaching the crosswalk. It seems to us that appellant himself by his testimony concedes that his act was a proximate cause of the collision, and, since any question of respondent's contributory negligence has been eliminated by the verdict of the jury, we are compelled to conclude that appellant's act was the sole cause of the injury.

The judgment is affirmed.

BEALS, C. J., ROBINSON, JEFFERS, MALLERY, and GRADY, JJ., concur.

SIMPSON, J. (dissenting)—In this case the trial court, in its instructions, defines proximate cause as:

"The term 'proximate cause' means that cause which in a direct, unbroken sequence produces the injury complained of and without which such injury would not have happened."

The court also gave the following instructions:

"If you find that the said defendant, Harold T. Johnson, drove at a speed which was greater than was reasonable and proper under the circumstances existing, or at a speed in excess of that fixed by law and *that such excess speed, if any, proximately contributed in a material respect to the accident,* and that the plaintiff was not guilty of contributory negligence as herein defined, then I instruct you that the plaintiff is entitled to recover. . . .

"Even though you find from the evidence in this case that the automobile of the Defendant was operated at an excessive rate of speed, still this fact in itself would not entitle the Plaintiff to recover unless the Plaintiff further established by a fair preponderance of the evidence that *such excessive speed was a proximate cause of the accident;* that is, that the accident would not have occurred but for such excessive speed; and even though you should find that the said automobile was operated at an excessive rate of speed, still if it further appears that the accident would nevertheless have occurred even though said vehicle had been operated at a lawful rate of speed, then such excessive

rate of speed would not entitle the Plaintiff to recover and your verdict must be for the Defendant.

"If you find from the evidence that the Defendant was guilty of negligence in one or more of the particulars charged in the complaint, still this fact in itself would not entitle Plaintiff to recover. In addition to proving by a fair preponderance of the evidence that the Defendant was negligent in one or more of the particulars charged, *the Plaintiff must also prove by a fair preponderance of the evidence that such negligence, if any, was the proximate cause of the accident;* that is to say, that the accident would not have occurred but for such negligence; so, in this case, even though you find from the evidence that the Defendant was guilty of negligence, yet if it also appears that the accident would have occurred even though the Defendant had not been guilty of such negligence, then the Plaintiff cannot recover and your verdict must be for the Defendant. . . .

"It is the duty of persons operating vehicles upon the public highways, whether they are operating upon an arterial highway or not, to keep a reasonable lookout for pedestrians when approaching a crosswalk, and if you find that the defendant, Harold T. Johnson, failed to keep such a reasonable lookout or that he was driving his automobile in such a position in proximity to another automobile to his right that his view of the crosswalk and any pedestrians thereon was made ineffective or blotted out, this would be negligence, and if his failure to keep a reasonable lookout or the position in which he placed himself behind or beside the other car to his right made it impossible for him to see the plaintiff on the crosswalk, *such negligence would be a proximate cause of the injury,* and if you find furthermore that the plaintiff was free from contributory negligence under all the facts and circumstances you will find a verdict in favor of the plaintiff." (Italics mine.)

The speed was before the jury because appellant was traveling in a twenty-mile zone, and a witness for respondent testified that appellant was traveling thirty-five miles per hour.

It will be noted that the trial court properly defined proximate cause, submitted the question of speed to the jury, and then told the jury that negligence on the part of appellant was the proximate cause of the accident, provided that respondent was not guilty of contributory negligence.

The point I make is that, under the ruling of the majority, there will never be any reason to define or submit to a jury the question of proximate cause. The doctrine of proximate cause should not be subtracted from our law. It is in a certain sense reduced to a science. It deals in certainties, excluding uncertainties and vague generalities. It looks to the proximate, not to the remote; to the certain, not to the doubtful; to the clear, not to the misty; to the efficient nearest known cause relating to the fact under consideration. It looks beyond the investigation to truth in the search for causes. The proximate cause is the only cause which can be reasoned conclusively.

The principal determination in cases of the character which we have before us should be the ascertainment of the proximate cause. The instruction of the trial court which took away from the jury the ascertainment of the proximate cause was erroneous, and the case should be returned for a new trial.

MILLARD and BLAKE, JJ., concur with SIMPSON, J.