[No. 179-3.    Division Three.    November 30, 1970.]

PATRICK W. BILLUPS, *Appellant*, v. JAMES L. MATZKE *et al.*, *Respondents.*

*Douglas D. Peters* (of *Felthous, Brachtenbach, Peters & Schmalz*), for appellant.

*Norman R. Nashem, Jr.* (of *Nashem, Prediletto & Fortier*), for respondents.

GREEN, J.—Plaintiff, National Bank of Washington, administrator of the estate of Teresa Louise Billups, brought

a wrongful death action on behalf of the surviving husband, Patrick W. Billups, against defendants, James L. Matzke and Electrolux Division of Consolidated Foods Corporation, his employer. From a verdict for defendants, plaintiff appeals.

About 6:45 p.m. on February 22, 1968, Teresa Billups was struck by defendant Matzke's car as she was crossing state Highway 12 near Buena, Washington. State Highway 12, a through highway, connects lower valley towns with the city of Yakima; it is intersected at the scene of the accident by state Highway 22. In this area, Highway 12 runs in a general north-south direction and Highway 22 in a general east-west direction. Highway 12 is two lanes; at the point of its intersection with Highway 22, storage lanes are provided for turns onto Highway 22 from either direction. At the time of the accident, the light condition was described as "dusk to dark"; the road bare and dry. A marked crosswalk is provided on the north side of the intersection. The intersection and crosswalk were lighted by mercury vapor lights.

The decedent had been visiting friends on the west side of Highway 12 and was walking home when the accident occurred. She walked along the left side of Highway 22 to its intersection with Highway 12. She crossed the southbound lane of Highway 12 and was struck by defendant as she proceeded from the southbound storage lane area into the northbound lane of traffic.

Defendant Matzke was driving in the northbound lane toward Yakima. He was following a car driven by Pamela Blomquist who, as she approached the intersection, slowed to 40 miles per hour and pulled into the northbound storage lane to turn left onto Highway 22. Matzke then increased his speed and upon approaching the intersection saw decedent in the crosswalk in front of the southbound storage lane. He stated she appeared to be running. He applied his brakes, swerved right and went into a skid but was unable to avoid hitting decedent. The evidence is disputed as to whether decedent was struck by the left front fender of

Matzke's car or near the side rear-vision mirror and left front door. Skid marks of the Matzke car commenced 20 to 30 feet prior to the crosswalk and continued for 115.6 feet beyond the point of impact. After a 160 degree turn the car came to rest in a ditch on the right side of the highway. The evidence does not indicate Matzke was proceeding in excess of the speed limit.

Upon impact, the decedent was thrown some 10 feet into the air and landed in the southbound lane of traffic on Highway 12 where she was struck by an oncoming car and dragged back into the intersection. One can hardly imagine a more tragic event, all of which occurred within the view of decedent's husband who was standing on the northeast corner of the intersection and shouted a warning to decedent immediately before the accident.

Plaintiff first assigns error to the giving of court's instruction No. 10:

> One is charged with the duty of seeing that which he would have seen had he been exercising ordinary care.

Plaintiff contends this instruction imposed upon decedent an unconditional duty to look and see vehicular traffic after entering the crosswalk and such is not the law. We disagree.

■ This instruction applied to the defendant a well as the decedent. It did not impose an absolute duty to look care and if ordinary care would require either of them to upon either; it simply required them to exercise ordinary look, they were charged with the duty of seeing what was there to be seen. An identical instruction was expressly approved in *Cakowski v. Oleson,* 1 Wn. App. 780, 783, 463 P.2d 673 (1970)

In *Olsen v. Peerless Laundry,* 111 Wash. 660, 191 P. 756 (1920), discussing the duties of a pedestrian after entering the crosswalk, it was said at page 665:

> It is true the testimony for the plaintiffs is not very clear whether, after stepping onto Third [A]venue, Mrs. Olsen thereafter looked for approaching vehicles; but we cannot say, as a matter of law, that such was her duty. We

have, time and again, said that one must, before undertaking to cross a street, look for approaching vehicles, but whether, after so doing and while making the crossing, he must again look or continue to look, depends on many circumstances and conditions; such as the amount of traffic; the probability of their being approaching vehicles; whether the statutes or ordinances give him the right of way; whether other objects or things have attracted his attention. Manifestly this is a question for the jury.

*Farrow v. Ostrom,* 10 Wn.2d 666, 670, 117 P.2d 963 (1941); *Beireis v. Leslie,* 35 Wn.2d 554, 562, 214 P.2d 194 (1950); *McCandless v. Inland Northwest Film Serv., Inc.,* 64 Wn.2d 523, 529, 392 P.2d 613 (1964); *Cakowski v. Oleson, supra.*

Plaintiff relies upon *Jung v. York,* 75 Wn.2d 195, 449 P.2d 409 (1969), which is factually distinguishable. The court held that on those facts the pedestrian was not negligent in failing to look as a matter of law. Likewise, *Landeis v. Poole,* 69 Wn.2d 515, 418 P.2d 717 (1966), cited in oral argument does not apply.

Next, plaintiff assigns error to the giving of the following italicized portion of the court's instruction No. 15:

A statute provides:

(1) That the driver of a vehicle shall yield the right of way, slowing down or stopping if necessary, to a pedestrian crossing the roadway within a crosswalk when the pedestrian is upon the half of the roadway upon which the vehicle is traveling or approaching so closely from the opposite half of the roadway as to be in danger;

(2) *That no pedestrian shall suddenly leave a curb or other place of safety and walk or run into the path of a vehicle which is so close that it is impossible for the driver to yield.*

(3) Every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway and shall give warning by sounding the horn when necessary.

(4) The driver of a vehicle may overtake and pass another vehicle upon the right only under conditions permitting such movement in safety.

This right of way, however, is not absolute but rela-

tive, and the duty to exercise ordinary care to avoid collisions rests upon both parties. The primary duty, however, rests upon the party not having the right of way.

(Italics ours.) Plaintiff took exception in the trial court to the giving of paragraph (2) upon the ground the jury could believe decedent was in a place of safety prior to entering the defendant's lane of traffic; whereas, it is contended under *Jung* traffic lanes are not positions or places of safety. In the brief on appeal plaintiff also argues that paragraph (2) is in conflict with the last phrase of paragraph (1) of the instruction. We find no error in giving this instruction.

■ The instruction was given in the language of RCW 46.61.235. There was evidence from which the jury could have found: the decedent was hurrying across the highway; the traffic was heavy at the time with many cars traveling north and south on Highway 12 and cars entering Highway 12 from Highway 22 on the west; she had just barely cleared the southbound lane and entered the storage lane when wind from a southbound car blew her dress; she started to run from the storage lane across the northbound lane; and she ran into the side or immediate left front of defendant's car. There was no car in the southbound storage lane. Under these circumstances, it was not error to give the instruction. We believe the storage lane was a place of safety and there was sufficient evidence from which the jury could have found that decedent left that place of safety and either walked rapidly or ran into the path of defendant's vehicle which was so close that it was impossible for the driver to yield. *Turnquist v. Rosaia Bros., Inc.*, 196 Wash. 434, 440, 83 P.2d 353 (1938); *Hagstrom v. Limbeck*, 15 Wn.2d 399, 404, 130 P.2d 895 (1942).

■ Last, plaintiff contends the trial court erred in failing to give requested WPI 12.08.02 as follows:

If you find that the plaintiff was negligent and that plaintiff's negligence continued up to the time of the accident and that such negligence culminated in a situation of peril from which the plaintiff could not extricate

himself by the exercise of ordinary care, and if you find that the defendant by the exercise of ordinary care should have seen such peril in time to have had an opportunity to avoid the accident by the exercise of ordinary care, then the defendant had a duty to avail himself of that opportunity to avoid the accident. If you find that he failed to do so and that his failure was a proximate cause of the accident, he is liable notwithstanding plaintiff's own negligence.

A review of the record reflects no error. Based on the facts of this case, defendant did not have the last *clear* chance to avoid the accident. Where only a last possible chance exists, the instruction should not be given. *Lee v. Cotten Bros. Co.,* 1 Wn. App. 202, 460 P.2d 694 (1969); *Sonnenberg v. Remsing,* 65 Wn.2d 553, 398 P.2d 728 (1965).

Judgment affirmed.

EVANS, C. J., and MUNSON, J., concur.

Petition for rehearing denied December 21, 1970.

Review denied by Supreme Court March 8, 1971.