[No. 1173-1.    Division One—Panel 1.    November 20, 1972.]

HAROLD BURNHAM *et al., Respondents,* v. ERIKA NEHREN *et al., Appellants.*

*Wolf, Hackett, Beecher & Hart* and *John A. Hackett,* for appellants.

*Vance, Davies & Roberts* and *Denny Anderson,* for respondents.

CALLOW, J.—This is an automobile-pedestrian case involving an uncontrolled intersection and a marked crosswalk. The jury returned a verdict for the defendant-driver, and the trial court granted the plaintiff-pedestrian's motion for new trial. The defendant-driver appeals.

Around 5 p.m. on November 8, 1968, a dark and rainy

evening, the pedestrian, Jeanne Burnham, left her place of employment near the Seattle Center and walked westbound on John Street towards her bus stop across Fifth Avenue North under the monorail tracks. She was familiar with the area, and this evening was wearing a dark blue raincoat and carrying an umbrella. Fifth Avenue North runs generally north and south and provides two lanes of travel in each direction while John Street runs east and west to form an intersection with Fifth Avenue North. There is no traffic signal or overhead sign indicating a crosswalk at the intersection or preceding it. The crosswalk across Fifth Avenue North is on the south side of the intersection marked by two white parallel painted lines on the pavement.

When the pedestrian reached the curb at Fifth Avenue North and John Street, she testified she stopped facing west, looked to her left, saw no traffic within the block between her and Denny Avenue, which is to the south, looked to her right and saw cars about a half block away southbound on Fifth Avenue North. She waited before stepping off the curb and then proceeded to walk towards the centerline of Fifth Avenue North. She was struck in the crosswalk in the inside lane of the northbound lanes. The testimony of the plaintiff is that she had walked to the west side of the inside lane of the northbound lanes of Fifth Avenue North, had paused there waiting for the southbound traffic to clear and was about to step into the third or inside lane of the southbound traffic when she was struck.

The driver, Erika Nehren, testified she had her headlights on and had stopped for a red light at the intersection of Fifth Avenue North and Denny, one block south of the accident site. Another car was alongside her in the outside lane of the two northbound lanes of Fifth Avenue North. When the signal light changed, she proceeded north in the inside lane toward John Street within the speed limit. The car on her right proceeded somewhat faster and was approximately a car length ahead of her at the John Street

crosswalk. The driver had traveled this route before, was familiar with the intersection crosswalk, and knew that pedestrians used the crosswalk at that time of day. As she approached the crosswalk within the speed limit, the car on the outside lane continued straight ahead without stopping or swerving. The driver first saw the plaintiff as "an umbrella and a shadow—a person walking down . . ." two steps to her right in the outside lane walking from in front of the car traveling in the outside lane. She immediately put on her brakes. The plaintiff continued walking and took three or four steps before she was hit by the decelerating right front of the car.

An independent witness was driving another vehicle proceeding south toward John Street at from 15 to 25 miles per hour. He testified he saw the headlights of northbound traffic moving towards him as he cleared the intersection one block north of John Street and approaching that intersection noticed the car in the outside northbound lane was ahead of the car in the inside lane by about one car length. He further testified he stopped at the intersection of Fifth Avenue North and John Street and observed a pedestrian close to the curb, walking from the curbing. The car in the curb lane was approximately halfway through the block, and the speed of the defendant's car was approximately 20 miles per hour. The plaintiff was walking, looking straight across the street, carrying a purse and an umbrella. This witness further testified that the car in the curb lane did not slow but went behind her, narrowly missing her. The plaintiff walked continuously at an ordinary walk without any pause until she was hit in the center of the inside lane.

The first assignment of error challenges the failure to give the driver's proposed instruction, which is a direct quote of section 21.14.040 of the Seattle Traffic Code, and which reads as follows:

Where traffic control signals are not in place or not in operation, the operator of a vehicle shall yield the right-of-way, slowing down or stopping, if need be, to so yield, to any pedestrian crossing the roadway within a crosswalk when the pedestrian is upon the half of the road-

way upon which the vehicle is traveling, or when the pedestrian is approaching so closely from the opposite half of the roadway as to be in danger, but no pedestrian shall suddenly leave a curb or other place of safety and walk or run into the path of a vehicle which is so close that it is impossible for the driver to yield.

Further, the driver challenges the granting of the pedestrian's motion for new trial and the trial court's ruling that the driver was negligent as a matter of law.

RCW 46.61.235 which reads in part as follows, is pertinent:

(1) When traffic-control signals are not in place or not in operation the driver of a vehicle shall yield the right of way, slowing down or stopping if need be to so yield, to a pedestrian crossing the roadway within a crosswalk when the pedestrian is upon the half of the roadway upon which the vehicle is traveling, or when the pedestrian is approaching so closely from the opposite half of the roadway as to be in danger.

(2) No pedestrian shall suddenly leave a curb or other place of safety and walk or run into the path of a vehicle which is so close that it is impossible for the driver to yield.

. . .

(4) Whenever any vehicle is stopped at a marked crosswalk or at any unmarked crosswalk at an intersection to permit a pedestrian to cross the roadway, the driver of any other vehicle approaching from the rear shall not overtake and pass such stopped vehicle.

■ A review of the cases discussing the duties of a pedestrian reveal those duties to be as follows:

1. Before entering a crosswalk, he must look for approaching vehicles and is contributorially negligent as a matter of law if he steps from a curb into the path of an oncoming car without looking. Where a pedestrian leaves the curb after looking and no vehicle appears to be within striking distance at that time, it is a jury question as to whether the pedestrian's action was contributorially negligent. *Beireis v. Leslie,* 35 Wn.2d 554, 214 P.2d 194 (1950); *Farrow v. Ostrom,* 10 Wn.2d 666, 117 P.2d 963 (1941).

2. Upon entering a crosswalk, no pedestrian shall sud-

denly leave a curb or other place of safety and walk or run into the path of a vehicle which is so close that it is impossible for the driver to yield. RCW 46.61.235; *Iwata v. Champine,* 74 Wn.2d 844, 447 P.2d 175 (1968); *Billups v. Matzke,* 3 Wn. App. 716, 477 P.2d 188 (1970).

3. The right-of-way protection afforded a pedestrian in a crosswalk is an exceedingly strong one, and a pedestrian in a marked crosswalk has a right to rely on this protection and to assume that automobile drivers will respect it. *Shasky v. Burden,* 78 Wn.2d 193, 470 P.2d 544 (1970).

4. After entering a crosswalk and establishing his course, a pedestrian is not necessarily negligent for failure to keep a further lookout. Whether the pedestrian then, under all the facts and circumstances, exercised ordinary care is a jury question. *Dabol v. United States,* 337 F.2d 163 (9th Cir. 1964); *Olsen v. Peerless Laundry,* 111 Wash. 660, 191 P. 756 (1920); *Cakowski v. Oleson,* 1 Wn. App. 780, 463 P.2d 673 (1970).

5. A pedestrian must use the right-of-way accorded him with due care for his own safety. By his negligence, a pedestrian may be guilty of contributory negligence as a matter of law or his conduct may justify a finding by the trier of the fact that he was contributorially negligent as a matter of fact. *Miller v. Edwards,* 25 Wn.2d 635, 644, 171 P.2d 821 (1946).

6. A pedestrian crosswalk provides strong protection, but it is not an absolute sanctuary. Reduced visibility does not lessen the right-of-way protection but engenders greater vigilance on the part of both the driver and the pedestrian. Where visibility was poor and the pedestrian did not look for approaching vehicles after entering a crosswalk, this was substantial evidence under the circumstances from which the jury could infer contributory negligence. *Oberlander v. Cox,* 75 Wn.2d 189, 449 P.2d 388 (1969).

7. The crosswalk is not a complete and absolute sanctuary, and the burden of the motorist is not impossible. There remains a possibility that a pedestrian, after having passed the center point of the intersection and being struck

by a vehicle while in a marked crosswalk, may have been contributorially negligent. If there is evidence to support the issue, the court must submit the issue of contributory negligence to the jury. *Shasky v. Burden, supra; Oberlander v. Cox, supra.*

8. A pedestrian who walks or runs into the side of a car, the front of which has passed him, is guilty of contributory negligence as a matter of law. *Iwata v. Champine, supra.*

▮ The duties of the driver of a vehicle are as follows:

1. The driver shall yield the right-of-way, slowing or stopping, if necessary, to a pedestrian crossing the roadway within a crosswalk when the pedestrian is upon the half of the roadway upon which the vehicle is traveling or approaching so closely from the opposite half of the roadway as to be in danger. *Billups v. Matzke, supra; Cakowski v. Oleson, supra.*

2. It is the duty of a driver approaching a crossing to maintain a continuous observation in order to avoid injuring a pedestrian and failure on the part of a driver to yield the right-of-way to a pedestrian constitutes negligence per se if the pedestrian was seen or should have been seen by the driver. *Oberlander v. Cox, supra; Ross v. Johnson,* 22 Wn.2d 275, 155 P.2d 486 (1945).

3. A driver is negligent as a matter of law if he fails to yield the right-of-way to a pedestrian in a crosswalk in the absence of evidence of unusual circumstances. *Daley v. Stephens,* 64 Wn.2d 806, 394 P.2d 801 (1964).

4. Every driver shall exercise due care to avoid colliding with any pedestrian and shall give warning by sounding his horn when necessary. *Billups v. Matzke, supra; Cakowski v. Oleson, supra.*

5. The right-of-way given to a pedestrian is not absolute but relative, and the duty to exercise ordinary care to avoid collisions rests upon both parties. The primary duty, however, rests upon the party not having the right-of-way. *Billups v. Matzke, supra; Cakowski v. Oleson, supra.*

6. A driver should always be aware where pedestrians may be crossing a street at intersections and keep a reason-

able lookout for them. Pedestrians so crossing the street are entitled to the right-of-way. *Miller v. Edwards, supra; Ross v. Johnson, supra.*

7. It is negligence per se for a driver to place and maintain himself in such a position upon the highway that his observation of pedestrians on the crosswalk is made impossible in consequence of which he is prevented from discharging his duty to yield the right-of-way to a pedestrian. Therefore, a driver must refrain from driving in such proximity to another automobile to the right that the view of a crosswalk or pedestrian thereon would be made ineffective or blotted out. *Ross v. Johnson, supra.*

8. The existence of inclement weather or a heavy fog does not lessen the right-of-way enjoyed by a pedestrian in a crosswalk unless the pedestrian suddenly left a place of safety or ran into the path of a vehicle so close to him as to make it impossible for the driver to yield. Inclement weather places an added burden of care on both driver and pedestrian, but the pedestrian still has the right-of-way. *Oberlander v. Cox, supra; Miller v. Edwards, supra.*

The trial court granted a new trial on its determination that no reasonable inference could be drawn from the evidence to justify submitting the issue of negligence of the driver to the jury. The trial court properly observed that the jury should have been instructed that the driver was negligent as a matter of law and that such negligence was a proximate cause of the pedestrian's claimed injuries and damages. We concur with the trial judge that the evidence supports only the conclusion that the driver, on approaching the crosswalk, did not maintain a continuous observation by which she could have seen a pedestrian in the crosswalk, placed her vehicle in such a position on the highway that she could not observe, because of the intervening vehicle, that a pedestrian was using the crosswalk, did not yield the right-of-way and thereby failed to discharge her duty of care. Under the instructions given, the jury could have concluded incorrectly that the defendant was not negligent. Accordingly, a new trial is necessary.

The trial court in his order granting a new trial recited that he made no determination as to the merits of other arguments advanced by the plaintiff-pedestrian.

The defendant-driver assigned as error the failure to give the proposed instruction from the city ordinance which we have previously set forth. Under the circumstances presented, that instruction would be inappropriate since the evidence does not reflect that the pedestrian suddenly left a curb or other place of safety and walked into the path of a vehicle which was so close that it was impossible for the driver to yield. However, the question of contributory negligence on the part of the pedestrian was for the jury under the guidelines previously reflected concerning the duty of a pedestrian after he enters a crosswalk. Thus, it was approprite for the jury to be informed that after a pedestrian enters a crosswalk, although he is not necessarily negligent for failure to keep a further lookout, he must use the right-of-way accorded him with due care for his own safety, and whether he did so, considering the reduced visibility, is a question of fact for their decision.

The order of the trial court granting a new trial is affirmed, and the cause is remanded for further proceedings consistent with this decision.

HOROWITZ, C.J., and WILLIAMS, J., concur.