# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| JOHN B. DILLINGER, a single individual, | No. 43586-1-II |
| Appellant, | |
| v. | |
| RICHARD M. DIXSON, and JANE DOE DIXSON, and the marital community properties comprised thereof, | UNPUBLISHED OPINION |
| Respondents. | |

DEPUTY

FEARING, J.P.T.[1] — Richard Dixson struck pedestrian John Dillinger with Dixson's car, while Dillinger crossed a highway outside a crosswalk. Dillinger sued Dixson for negligence, and the trial court dismissed the case on summary judgment. Because we may not weigh the evidence and because Dillinger shows a genuine issue of material fact on whether Dixson was negligent, we reverse and remand.

## FACTS

The pedestrian-car accident occurred between 6:30 and 7:00 p.m., on December 17, 2009, on SR (service road) 305, in Poulsbo, south of the highway's intersection with Hostmark Road. Here, SR 305 runs north and south and contains two lanes in each direction and a fifth center turn lane. Dixson drove southbound on SR 305. Witness Sharon Bohl drove northbound on SR 305. Each approached the intersection at Hostmark Road, which is controlled by a traffic light. Dixson arrived first and stopped at a red traffic light. The intersection includes crosswalks.

---

[1] Judge Fearing is a Division Three judge serving with Court of Appeals, Division Two, under CAR 21(a).

As Sharon Bohl approached the intersection at Hostmark Road, she noticed a man standing on the sidewalk to her left. This man was John Dillinger, who wore brown clothing. Street lights illuminated the sidewalk. By Bohl's estimation, she first noticed Dillinger about 100 yards away as she traveled at about 40 miles per hour. As Bohl drove past Dillinger and before the traffic light turned green for her and Dixson, John Dillinger stepped into the highway and walked slowly across it. Before Bohl reached the intersection, the light turned green. With the events unfolding, Sharon Bohl thought to herself: "Oh my God. He's going to get hit." Clerk's Papers (CP) at 32. She believed that, because of the rain, the glare, and the darkness, southbound drivers would not see Dillinger walking in the middle of the highway.

Richard Dixon drove in the left-hand or inner southbound lane on SR 305. Once the traffic light turned green, Dixson's car accelerated, and after an unknown distance he heard a noise warning him he hit something. He pulled into the middle turn lane and saw that he had hit a person. Dixon testified that he did not see Dillinger at all before hitting him. Dixson was probably traveling about 15 to 25 miles per hour. The front left side of Dixson's car collided with Dillinger's body, damaging the car and injuring Dillinger. Sharon Bohl also heard an impact, turned around, and attempted to provide aid.

John Dillinger was 70 years old at the time of the accident. He does not remember the accident or what happened before it. All he remembers is waking up in a hospital. Medics smelled alcohol on Dillinger's breath, but Dillinger could not answer how many drinks he consumed. A blood alcohol test taken at the hospital showed a blood alcohol level of 294 mg/dL (milligrams per deciliter), more than three times the statutory intoxication level. Officer Sabado found empty mini whiskey bottles in Dillinger's backpack. John Dillinger has a history of public intoxication.

2

Officer Ricki Sabado, who arrived at the scene after the accident, stated that the southbound lanes of SR 305 in this area were poorly lit, though they were better lit than the northbound lanes. Sabado stated that the street lights failed to illuminate the center of the five-lane road. Richard Dixson declared that it was raining. Sharon Bohl stated in one declaration that it was raining and, in another declaration, that it was clear. During her deposition, Bohl stated that she could not recall if it was raining, but, if it was not, the road was shiny and left a glare. Officer Sabado stated that it was raining.

Dixson moved for summary judgment, arguing that Dillinger did not show evidence that Dixson failed to exercise reasonable care. The trial court granted the motion and dismissed the case.

## ANALYSIS

Dillinger claims the trial court erred by granting summary judgment because a genuine issue of material fact exists regarding Dixson's negligence. We agree.

Summary judgment should be granted if the evidence establishes there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. CR 56(c); *Ruff v. County of King*, 125 Wn.2d 697, 703, 887 P.2d 886 (1995). To succeed on a summary judgment motion, the moving party must first show the absence of an issue of material fact. *Ingersoll v. DeBartolo, Inc.*, 123 Wn.2d 649, 654, 869 P.2d 1014 (1994). The burden then shifts to the nonmoving party to set forth specific facts showing a genuine issue for trial. *Ingersoll*, 123 Wn.2d at 654. We must construe all facts and reasonable inferences in the light most favorable to the nonmoving party. *Lybbert v. Grant County*, 141 Wn.2d 29, 34, 1 P.3d 1124 (2000). On appeal of summary judgment, the standard of review is de novo and we perform the same inquiry as the trial court. *Lybbert*, 141 Wn.2d at 34.

Dixson emphasizes, in support of affirming the trial court, the facts that Dillinger was intoxicated and jaywalking. We agree that John Dillinger, by crossing in the middle of the road, may have violated statutory duties found in RCW 46.61.[1] But the question on appeal does not concern the negligence of Dillinger. Under Washington's rules of comparative fault, Dillinger may be negligent and still entitled to recovery. *See* RCW 4.22.005. A Washington statute, RCW 5.40.060, bars Dillinger from any recovery, if the trier of fact determines his intoxication was a proximate cause of his injuries and he was more than fifty percent at fault. But that was not the issue the trial court was asked to decide. Therefore we only concern ourselves as to whether any facts support negligence on behalf of Richard Dixson.

A controlling statute is former RCW 46.61.245 (2008), which reads:

[E]very driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway and shall give warning by sounding the horn when necessary and shall exercise proper precaution upon observing . . . any obviously confused or incapacitated person upon a roadway.

"[A] rule of the road right of way is relative rather than absolute, and does not absolve one in the favored position from the duty to exercise due care to avoid an accident." *Cox v. Kirch*, 12 Wn.2d 678, 682, 123 P.2d 328 (1942). Thus, John Dillinger and Richard Dixson had reciprocal duties. Dixson may not have "observed" Dillinger before the collision, but the driver of a vehicle is charged with seeing what is available to be seen. *Day v. Goodwin*, 3 Wn. App. 940, 944, 478 P.2d 774 (1970). A driver will not be heard to say that he did not see an object which he plainly could have seen had he looked. *Chapin v. Stickel*, 173 Wash. 174, 178, 22 P.2d 290 (1933); *Day*, 3 Wn. App. at 944. Nor does the weather automatically excuse Dixson from

---

[1] Amendments to Chapter 46.61 RCW occurred in 2010, but do not affect our analysis. LAWS OF 2010, ch. 242, § 2.

negligence. Inclement weather and reduced visibility places greater vigilance on both driver and pedestrian. *Burnham v. Nehren*, 7 Wn. App. 860, 864, 866, 503 P.2d 122 (1972).

Sharon Bohl saw John Dillinger leave the sidewalk and enter the road. Despite her concern that oncoming traffic would not see Dillinger, a trier of fact could reasonably conclude that Dixson should have also seen Dillinger upon his entering the highway and, since Dillinger was walking slowly, could have avoided the accident. This is not a case where a child darted from behind an obstruction and could not be seen in time to avoid the accident. *See Burns v. Harfst*, 42 Wn.2d 795, 259 P.2d 379 (1953); *Ellefsen v. Wilt*, 36 Wn.2d 56, 217 P.2d 318 (1950); *Haydon v. Bay City Fuel*, 167 Wash. 212, 9 P.2d 98 (1932). John Dillinger walked unhurriedly across the highway, reached the second lane, and was even struck on the far side of Dixson's car.

We return to where we began—with a review of summary judgment principles. Negligence is generally a question of fact not susceptible to summary judgment. *Ruff*, 125 Wn.2d at 703. The jury not only determines the facts, but, after determining the conditions that existed, also draws a conclusion as to the reasonableness of the actors' conduct. *Crowl v. West Coast Steel Co.*, 109 Wash. 426, 432, 186 P. 866 (1920). "Any doubts as to the existence of a genuine issue of material fact is resolved against the moving party." *Atherton Condo. Apartment-Owners Ass'n Bd. of Dir. v. Blume Dev. Co.*, 115 Wn.2d 506, 516, 799 P.2d 250 (1990). The purpose of the summary judgment motion is to determine whether there is a triable issue of fact, not which party is likely to prevail at trial. *Hall v. Stamm*, 208 Ill. App. 3d 83, 566 N.E.2d 995, 997 (1991). Dillinger has shown an issue of triable fact.

Alternatively, Dixson argues that Dillinger fails to raise an issue of fact on proximate causation. He contends Dillinger failed to offer any evidence showing that, if he should have seen Dillinger, he would have seen him in time to avoid the collision. As with negligence,

5

proximate cause is also typically a jury question. *Bauer v. White*, 95 Wn. App. 663, 669, 976 P.2d 664 (1999).

A jury could conclude that had Dixson been attentive, he could have stopped, or not accelerated, his car such as to avoid the accident. But Dixson did not move for summary judgment on this basis. Dixson first raised proximate causation in his reply below. This is improper. "It is the responsibility of the moving party to raise in its summary judgment motion all of the issues on which it believes it is entitled to summary judgment. Allowing the moving party to raise new issues in its rebuttal materials is improper because the nonmoving party has no opportunity to respond." *White v. Kent Med. Ctr., Inc., P.S.*, 61 Wn. App. 163, 168, 810 P.2d 4 (1991).

Because there is a genuine issue of material fact whether Dixson was negligent in not seeing Dillinger in the road in time to avoid the accident, the trial court erred in granting the defendant's motion for summary judgment. We reverse and remand for further proceedings.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
FEARING, J.

We concur:

_____
JOHANSON, A.C.J.

_____
PENOYAR, J.